FILED by KT   D.C.
ELECTRONIC

Feb. 27, 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATE DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

FREDERICK BRADLEY NOWELL, SR.,

　　　　　　　　　Plaintiff　　　　　**09-CV-60308-Altonaga-White**

v.　　　　　　　　　　　　　　　Case No.:_____

THE REDLAND COMPANY, INC. a Florida Corporation;
CHARLES P. MUNZ, individual; TERRY L. MUNZ, individual,
jointly and severally; JERALD A. FRESHMAN, individually,
FRESHMAN AND FRESHMAN, LLC, a Florida Limited Liability
Corporation, jointly and severally; LYNETTE EBEOGLUE
McGUINNESS, individual, MURAI, WALD, BIONDO, MORENO
& BROCHIN, P.A., a Florida Professional Association; jointly and
severally; CHRISTI SHARP, individual, CONN & SHARP, CPA,
a certified accounting firm licensed in Florida, jointly and severally;
ERLE ROSS ZIMMERMAN, individual, ZIMMERMAN, JOSEPH,
BAYNE & WOLFE, P.A., a Florida Professional Association, jointly
and severally; MARC NURIK, individual, ROBERT C. BUSCHEL,
individual, ROTHSTEIN, ROSENFELDT & ADLER, P.A., a Florida
Professional Association, jointly and severally; HOWARD
HOLLANDER, individual, HOLLANDER & BARTELSTONE, P. A.,
a Florida Professional Association, jointly and severally; MICHAEL
A. ROSEN, individual,  WEINTRAUB, ROSEN & KING, P. A.,
a Florida Professional Association; jointly and severally; ANDREW
HALL, individual, ADAM HALL, individual, HALL, LAMB and
HALL, P.A., a Florida Professional Association, jointly and severally;
WILLIAM J. RATCLIFF, individual; RAY SUTTON, individual;
MICHAEL A. BROWN, individual

　　　　　　　　　Defendants.　　　　/

_____

**JURY TRIAL
DEMANDED**

_____

## COMPLAINT UNDER THE RACKETEERING INFLUENCED AND

## CORRUPT ORGANIZATIONS ACT

　　　COMES NOW the Plaintiff, **FREDERICK BRADLEY NOWELL, SR.,** pro se and for his
complaint, alleges as follows;

## PRELIMINARY STATEMENT

As a preliminary matter, the Defendant avers that he is not an attorney, has no legal or professional training pertaining to the preparation and filing of legal complaints, motions or memorandums. The Defendant seeks notice of such limitations and prays this Court to construe his pleadings liberally in light of the Supreme Court holding in *Haines v. Kerner*, 404 U.S. 519, 30 L. Ed.2d 652 (1972); *Cruz v. Beto*, 405 U.S. 319 (1972); *Lawler v. Marshal*, 898 F.2d 1196 (6th Cir. 1990); *Hill v. United States*, 368 U.S. 424, 430, (1962). The allegations and averments in a pro se pleading must be taken as true and construed in favor of the Defendant. *Tannenbaum v. United States*, 148 F. 3d 1262-63 (11th Cir. 1998).

## NATURE OF THE ACTION

1. This action arises from a scheme by which the Plaintiff was discredited, falsely incriminated, charged, falsely manipulated and defrauded into entering a plea based on "legal fiction" and imprisoned as a direct result of the conspirators hereto all of which was done for financial gain and unlawful enrichment of the Conspirators and others, named and unnamed as set forth herein.

2. For nearly a decade the Plaintiff served as an executive and principal vice president of Defendant, THE REDLAND CO., INC. In this position the Plaintiff was responsible for a major growth in the business's market share as well as its increased profits. The Plaintiff worked directly for Defendant CHARLES P. MUNZ and felt he enjoyed a near partner type of working relationship with Defendant MUNZ.

3. The Plaintiff and MUNZ negotiated a compensation plan whereby the Plaintiff would be compensated an amount approximately equal to 8% to 10% of the gross incomes of REDLAND. This payment plan set forth infra, was designed to save certain costs and hide the amount of actual compensation that MUNZ was paying the Plaintiff.

4. As part of Plaintiff's many responsibilities, Plaintiff managed and coordinated any and all litigations brought by or against REDLAND. Through this responsibility the Plaintiff worked closely with attorneys working for MUNZ and REDLAND. This also required the Plaintiff to have

a working knowledge of all contracts and transactions that related to any litigation.

5.      As certain business issues began to be investigated the Plaintiff was questioned by Munz as to how the Plaintiff would respond if questioned about any of these illegal dealings that were ongoing. The Plaintiff responded that out of his loyalty to REDLAND and MUNZ the Plaintiff would not volunteer information to anyone, but at the same time the Plaintiff would absolutely neither lie nor perjure himself over such unlawful and improper business practices. This response seemed to displease MUNZ.

6.      Through its conduct, as detailed herein, Defendants REDLAND, MUNZ and other named Defendants orchestrated or participated, directly or indirectly, in the affairs of an enterprise through a pattern of racketeering activity, and/or conspired to do so, in violation of the Racketeer Influenced and Corrupt Organizations Act (**"RICO"**), in violation of 18 U.S.C. § 1961 et seq.

7.      Through their conduct, defendants committed bribery in violation of 18 U. S. C. § 201; Mail Fraud in violation of 18 U.S.C. § 1341; Wire Fraud in violation of 18 U.S.C. § 1343; Conspiracy and attempt to commit Mail Fraud and Wire Fraud in violation of 18 U.S.C. § 1349; Obstruction of Justice in violation of 18 U. S. C. § 1503; Obstruction of Justice in proceedings before departments, agencies , and committees in violation of 18 U.S.C. § 1505; Obstruction of criminal investigation in violation of 18 U.S.C. § 1510; Obstruction of state and local law enforcement in violation of 18 U. S. C. § 1511; Tampering with a witness in violation 18 U. S. C. § 1512; Laundering of monetary instruments in violation of 18 U.S.C. § 1956 and Money Laundering in violation of 18 U.S.C. § 1957 et seq. and further violations of Racketeering Organizations in violation of 18 U.S.C. § 1962 ( c ) and ( d ).

8.      In general the Plaintiff has been deliberately injured in his character, his liberty and his business by the illegal actions of the Defendants and conspirators as set forth herein. These injuries were deliberate and with malice and forethought against the Plaintiff. These actions were intended to essentially bankrupt the Plaintiff so as to render Plaintiff's ability to be financially able to defend actions brought against Plaintiff, and discredit him to the extent that his credibility would be destroyed were he to be forced to give testimony against MUNZ or other prominent members of the organization and enterprise.

3

## PARTIES TO THIS ACTION

9.      The Plaintiff, FREDERICK BRADLEY NOWELL, SR. a/k/a F. Bradley Nowell, Sr. is an individual whose current address is Reg. No. 79553-004 Antaeus Unit, Federal Medical Center, P.O. Box 14500, Lexington, KY 40512-4500. At all relevant times herein from September 1994 through February 8, 2007 the Plaintiff was employed as Vice President of Defendant The REDLAND Company, Inc.;  further at all relevant times herein Plaintiff was President and sole shareholder of The Nowell Group, Inc. ("NGI"), a Florida Corporation. Between 1992 - 1997 NGI Marine was a registered fictitious name owned and registered by The Nowell Group, Inc.. After 1997 Plaintiff no longer registered NGI Marine as a fictitious name.

10.     On information and belief, Defendant THE REDLAND COMPANY, INCORPORATED ("REDLAND") is a Florida Corporation with a principal place of business located at 144 N. W. 11th Street, Homestead, Florida 33040.  On further information and belief REDLAND is an engineering and construction company of which Defendant MUNZ is the sole shareholder and corporate President.  At all relevant times hereto REDLAND acted in furtherance of the conspiracy and enterprise.  The acts of REDLAND were in furtherance of the scheme(s) set forth herein and were for the purpose of unlawfully enriching itself, its owners and co-conspirators.

11.     Defendant CHARLES P. MUNZ ("MUNZ"), was, at all relevant times herein the President and on information and belief sole shareholder of Defendant THE REDLAND COMPANY, INC.  Defendant MUNZ is sued herein individually, jointly and severally with Defendant REDLAND and Defendant TERRY MUNZ his wife. In the acts alleged herein, MUNZ acted within the scope of his authority and employment as an employee and officer of REDLAND. Munz's residence address is 23600 S.W. 162nd Avenue., Homestead, FL 33031.  It is further alleged that MUNZ acted in his own behalf and capacity, his actions in furtherance of the conspiracy and scheme(s) were intended for his own enrichment as well as for the enrichment in varying degrees of the other conspirators. At all relevant times herein Defendant MUNZ acted in furtherance of the conspiracy and enterprise.

12.     Defendant  TERRY L. MUNZ ("T. MUNZ") was at all relevant times herein and individual as well as the Corporate Secretary of REDLAND, whose residence address is 23600 S.

4

W. 162nd Ave., Homestead, Florida 33031. In all the acts alleged herein, T. Munz acted within the scope and authority as an officer and employee of REDLAND as well as acted in her own capacity as an individual. T. MUNZ was and is the lawful spouse of MUNZ and each are sued jointly and severally with the other and with REDLAND. At all relevant times herein her acts in furtherance of the scheme(s) and conspiracy were intended for her own enrichment and to varying degrees the enrichment of the other conspirators. At all relevant times herein Defendant acted in furtherance of the conspiracy and enterprise.

13.     Defendant JERALD A. FRESHMAN, ESQUIRE ("J. FRESHMAN") is an individual; an attorney; and a partner in Defendant FRESHMAN AND FRESHMAN, LLC whose principal place of business is 9155 S. Dadeland Blvd., Suite 1014, Miami, Florida 33156. Defendant J. FRESHMAN and FRESHMAN & FRESHMAN, LLC are sued individually, jointly and severally one with another. On information and belief J. FRESHMAN was hired as legal counsel for REDLAND and MUNZ. At all relevant times herein Defendant J. FRESHMAN acted within the scope and authority of his contracted position as retained legal counsel. At all relevant times herein Defendant acted in furtherance of the scheme(s) and conspiracy and intended to enrich himself and to varying degrees other members of the conspiracy and enterprise.

14.     Defendant FRESHMAN & FRESHMAN, LLC ("F & F LLC") is a Florida Limited Liability Corporation whose principal place of business is 9155 S. Dadeland Blvd., Suite 1014, Miami, Florida 33156. Defendant F & F, LLC was hired and contracted with to provide legal and other services to REDLAND and MUNZ. At all relevant times herein Defendant F & F, LLC acted in furtherance of the scheme(s) and conspiracy and intended to enrich itself and to varying degrees other members of the conspiracy and enterprise.

15.     Defendant LYNETTE EBEOGLUE McGUINNESS, ESQUIRE, ("McGUINNESS") is an individual; attorney; and also an employee of MURAI, WALD, BIONDO, MORENO & BROCHIN, P.A. whose principal place of business is Two Alhambra Plaza, PH 1B, Coral Gables, Florida 33134. Defendants McGUINNESS and MURAI, WALD, BIONDO, MORENO & BROCHIN, P.A. are sued individually, jointly and severally one with another. On information and belief McGUINNESS was hired as legal co-counsel for REDLAND and MUNZ. At all relevant times herein Defendant McGUINNESS acted within the scope and authority of her contracted

5

position as retained legal counsel. At all relevant times herein McGUINNESS acted in furtherance of the scheme(s) and conspiracy and intended to enrich herself and to varying degrees other members of the conspiracy.

16.     Defendant MURAI, WALD, BIONDO, MORENO & BROCHIN, P.A. ("MURAI et. al.") is a Florida Professional Association duly established under the laws of the State of Florida, whose principal place of business is located at Two Alhambra Plaza, PH1B, Coral Gables, FL 33134. Defendant MURAI, et. al. was hired and contracted with to provide legal and other service to REDLAND and MUNZ. At all relevant times herein Defendant MURAI, et. al. acted in furtherance of the scheme(s) and conspiracy and intended to enrich itself and to varying degrees other members of the conspiracy and enterprise.

17.     Defendant CHRISTI SHARP ("SHARP") is an individual; and accountant; and a principal of CONN & SHARP, CPA. whose principal place of business is located at 10 N. E. 18th Street, Homestead, Florida 33030-4519. Defendants SHARP and CONN are sued individually, jointly and severally one with another. On information and belief SHARP by agreement with CONN was hired as a full time accountant for REDLAND. At all relevant times herein Defendant SHARP acted within the scope and authority of her contracted position as accountant. At all relevant times herein SHARP acted in furtherance of the scheme(s) and conspiracy and intended to enrich herself and to varying degrees other members of the conspiracy and enterprise.

18.     Defendant CONN & SHARP ("CONN") is a Certified Public Accounting firm duly licensed and recognized by the State of Florida, whose principal address is 10 N. E. 18th Street, Homestead, Florida 33030-4519. Defendant CONN was hired and contracted with to provide accounting services to REDLAND. At all relevant times herein Defendant CONN acted in furtherance of the scheme(s) and conspiracy and intended to enrich itself and to varying degrees other members of the conspiracy and enterprise.

19.     Defendant ERLE ROSS ZIMMERMAN, ESQUIRE ("ZIMMERMAN") is an individual; an attorney; and also a partner in the law firm of ZIMMERMAN, JOSEPH, BAYNE & WOLFE, P.A., whose principal place of business is 7797 N. University Drive, Suite 108, Tamarac, Florida 33321. Defendants ZIMMERMAN and ( "JOSEPH, et. al.") are sued individually, jointly and severally one with another. Defendant ZIMMERMAN was retained by the Plaintiff to serve as

6

defense counsel in the criminal case; *United States v. Nowell* Case No.: 07-20415-cr-JEM, as well as to represent the Plaintiff in the related civil action *REDLAND v. Nowell, et. al.* in the 17th Judicial Circuit for Broward County, Florida Case No.: 07-3164CACE12.   On information and belief at some time during the representation of the Plaintiff; ZIMMERMAN compromised his client - attorney relationship and manipulated the Plaintiff in ways which would serve the interests of REDLAND, MUNZ and the conspiracy and enterprise in which they and the other Defendants participated in. At all relevant times herein Defendant ZIMMERMAN acted within the scope and authority of his contracted role as Plaintiff's criminal defense attorney however he also acted in furtherance of the scheme(s) and conspiracy and intended to enrich himself and to varying degrees other members of the conspiracy and enterprise.

20.     On information and belief Defendant ZIMMERMAN, JOSEPH, BAYNE & WOLFE P.A. ( "JOSEPH, et. al.") is a Florida Professional Association duly established under the laws of the State of Florida, whose principal business address is 7797 N. University Drive, Suite 108, Tamarac, Florida 33321.  Defendant "JOSEPH, et. al." was retained by the Plaintiff to serve as defense counsel in the criminal case; *United States v. Nowell, supra,*  as well as to represent the Plaintiff in the related civil action *REDLAND v. Nowell, et. al.*  Upon information and belief at some point during the representation of the Plaintiff; Defendant "JOSEPH, et. al." compromised their obligation to the Plaintiff and proceeded to manipulate the Plaintiff in ways which would serve the interests of REDLAND and MUNZ and the conspiracy in which they and other defendant participated in.  At all relevant times this Defendant acted in furtherance of the scheme(s) and conspiracy and intended to enrich itself and to varying degrees other  members of the conspiracy and enterprise.

21.     Defendant MARC NURIK, ESQUIRE, ("NURIK") is an individual; and attorney; and is an employee of the law firm of ROTHSTEIN, ROSENFELDT & ADLER, P. A. ("R. R. A."), whose principal business location is 401 E. Las Olas Boulevard, Fort Lauderdale, Florida 33301. Defendant NURIK and R. R. A. are sued individually, jointly and severally one with another. Defendant NURIK was retained by Plaintiff solely for the purpose of filing and arguing Plaintiff's Motion to Withdraw his Guilty Plea in the criminal case, *United States v. Nowell, supra,* and then was subsequently retained for the filing of the direct appeal to the United States Court of Appeals

7

for the Eleventh Circuit, appeal No. 07-14479.  At sometime and for reasons not yet known NURIK ignored the instructions of the Plaintiff and did certain acts which were beneficial to REDLAND, MUNZ and other conspirators and enterprise.  NURIK therefore acted in furtherance of the scheme(s) and conspiracy and intended to enrich himself and to varying degrees other members of the conspiracy and enterprise.

22.     Defendant ROBERT C. BUSCHEL, ESQUIRE , ("BUSCHEL" is an individual; an attorney; and an employee of the law firm of ROTHSTEIN, ROSENFELDT & ADLER, P. A. ("R. R. A."), whose principal business address location is 401 E. Las Olas Boulevard, Ft. Lauderdale, Florida 33301.  Defendant BUSCHEL and R. R. A. are sued individually, jointly and severally one with another.  Defendant BUSCHEL was retained by the Plaintiff solely for the purpose of filing and arguing Plaintiff's Motion to Withdraw his Guilty Plea in the criminal case; *United States v. Nowell*, *supra,* and then was subsequently hired for the filing of the direct appeal to the United States Court of Appeals for the Eleventh Circuit appeal No. 07-14479.  At sometime and for reasons not yet know BUSCHEL ignored the instructions of the Plaintiff and did certain acts which were beneficial to REDLAND, MUNZ and other conspirators.  BUSCHEL therefore acted in furtherance of the scheme(s) and conspiracy and intended to enrich himself and to varying degrees other members of the conspiracy and enterprise.

23.     On information and belief Defendant ROTHSTEIN, ROSENFELDT & ADLER, P. A. ("R.R. A.") is a Florida Professional Association duly established under the laws of the State of Florida, whose principal business address location is 401 E. Las Olas Boulevard, Fort Lauderdale, Florida 33301/ Defendant R. R. A. was retained by the Plaintiff to serve as defense counsel in the criminal case; *United States v. Nowell, supra* and more specifically to represent the Plaintiff in his Motion to Withdraw his Guilty Plea and to file a subsequent direct appeal (if one was needed).  Upon information and belief at some point during the representation of the Plaintiff; Defendant R. R. A. compromised their obligation to the Plaintiff and proceeded to manipulate the Plaintiff in ways which would sever the interest of REDLAND and MUNZ and the conspiracy and enterprise in which they and other defendants participated in.  At all relevant times this Defendant acted in furtherance of the scheme(s) and conspiracy and intended to enrich themselves and to varying degrees other members of the conspiracy and enterprise.

8

24.    Defendant HOWARD J. HOLLANDER, ESQUIRE ("HOLLANDER") is an individual; an attorney; and also a member of the firm Defendant HOLLANDER & BARTELSTONE, P. A. whose principle place of business is 1177 Kane Concourse, Suite 231, Bay Harbor Island, Florida 33154. Defendant HOWARD HOLLANDER and HOLLANDER & BARTELSTONE, P. A. are sued individually, jointly and severally one with another. On information and belief Defendant HOLLANDER was hired as legal counsel for REDLAND and MUNZ. At ll relevant times herein Defendant HOLLANDER acted within the scope and authority of his contracted position as retained legal counsel. At all relevant times herein Defendant acted in furtherance of the scheme(s) and conspiracy and intended to enrich himself and to varying degrees other members of the conspiracy and enterprise.

25.    On information and belief Defendant HOLLANDER & BARTELSTONE, P. A. ("HOLLANDER FIRM") is a Florida Professional Association duly established under the Laws of the State of Florida whose principle place of business 1177 Kane Concourse, Suite 231, Bay Harbor Island, Florida 33154. Defendant was hired and contracted with to provide legal and other services to REDLAND and MUNZ. At all relevant times herein Defendant acted in furtherance of the scheme(s) and conspiracy and intended to enrich themselves and to varying degrees other members of the conspiracy and enterprise.

26.    Defendant MICHAEL A. ROSEN, ESQUIRE ("ROSEN") is an individual; an attorney; and also a member of the firm Defendant WEINTRAUB, ROSEN & KING, P. A. whose principal place of business is 800 Brickell Avenue, Suite 1270, Miami, Florida 33131. Defendant and his firm are sued individually, jointly and severally one with another. On information and belief Defendant was hired as legal counsel for REDLAND and MUNZ. At all relevant times herein Defendant acted within the scope and authority of his contracted position as retained legal counsel. At all relevant times herein Defendant acted in furtherance of the scheme(s) and conspiracy and intended to enrich himself and to varying degrees others of the conspiracy and enterprise.

27.    Defendant WEINTRAUB, ROSEN & KING, P. A. (" ROSEN FIRM") is a Florida Professional Association duly established under the laws of the State of Florida, whose principal address is 800 Brickell Avenue, Suite 1270, Miami, Florida 33131. Defendant was hired and contracted with to provide legal and other services to REDLAND and MUNZ. At all relevant times

9

herein Defendant acted within the scope and authority of his contracted position as retained legal counsel in furtherance of the scheme(s) and conspiracy and intended to enrich themselves and to varying degrees other members of the conspiracy and enterprise.

28.     Defendant ANDREW HALL, ESQUIRE, ("ANDREW HALL") is an individual; an attorney; and a partner in the firm Defendant HALL, LAMB, AND HALL, P.A. whose principle place of business is Penthouse One, 2665 South Bayshore Drive, Miami, Florida 33133. Defendant and his firm are sued individually, jointly and severally one with another. On information and belief Defendant was hired as legal counsel for REDLAND and MUNZ. At all relevant times herein Defendant acted within the scope and authority of his contracted position as retained legal counsel. At all relevant times herein Defendant acted in furtherance of the scheme(s) and conspiracy and intended to enrich himself and to varying degrees others of the conspiracy and enterprise.

29.     Defendant ADAM HALL, ESQUIRE, ("ADAM HALL") is an individual; an attorney; and a partner in the firm Defendant HALL, LAMB AND HALL, P.A. whose principle place of business is Penthouse One, 2665 South Bayshore Drive, Miami, Florida 33133. Defendant and his firm are sued individually, jointly and severally one with another. On information and belief Defendant was hired as legal counsel for REDLAND and MUNZ. At all relevant times herein Defendant acted within the scope and authority of his contracted position as retained legal counsel. At all relevant times herein Defendant acted in furtherance of the scheme(s) and conspiracy and intended to enrich himself and to varying degrees others of the conspiracy and enterprise.

30.     Defendant HALL, LAMB AND HALL, P.A. ("H. L. H.") is a Florida Professional Association, duly established under the laws of the State of Florida, whose principle place of business is 2665 S. Bayshore Drive, Miami Beach, Florida 33133. Defendant H. L. H. and ADAM HALL and ANDREW HALL are sued individually, jointly and severally one with another. On information and belief Defendant was hired and contracted with to provide legal and other services to REDLAND and MUNZ. At all relevant times herein Defendant acted within the scope and authority of his contracted position as legal counsel. At all relevant times herein Defendant acted in furtherance of the scheme(s) and conspiracy and did intend to enrich itself and to varying degrees, other members of the conspiracy and enterprise.

31.     Defendant WILLIAM J. RATCLIFF ("RATCLIFF") is an individual and an employee of REDLAND. RATCLIFF resides at 13940 S. W. 127th Court, Miami, Florida 33186.

10

Defendant RATCLIFF is sued in his individual capacity. At all relevant times herein Defendant acted withing the scope and authority of his position as an employee of REDLAND. At all relevant times herein Defendant acted in furtherance of the scheme(s) and conspiracy and intended to enrich himself and to varying degrees others of the conspiracy and enterprise.

32. Defendant RAYMOND SUTTON, ("SUTTON") is an individual and an employee of REDLAND. SUTTON resides at 23799 S. W. 167th Avenue, Homestead, Florida 33031. Defendant SUTTON is sued in his individual capacity. At all relevant times herein Defendant acted within the scope and authority of an employee of REDLAND. To the extent that some of his activities herein included terroristic threatening, and physical and emotional harassment; such actions were performed under the direct instructions and orders of Defendant CHARLES MUNZ. At all relevant times herein Defendant acted in furtherance of the scheme(s) and conspiracy and intended to enrich himself and to varying degrees others of the conspiracy and enterprise.

33. Defendant MICHAEL A. BROWN, ("BROWN") is an individual and an employee of REDLAND, BROWN resides at 400 Heritage Circle, Pembroke Pines, Florida 33029. Defendant BROWN is sued in his individual capacity. On information and belief Defendant BROWN was a "drag-line" operator who performed the key role for MUNZ and REDLAND in the over dredging of the Homestead Pit by some 200%. At all relevant times herein BROWN acted within the scope of authority as an employee of REDLAND. Further and to the extent of his activities set forth herein he acted under the direct and indirect orders of MUNZ. At all relevant times herein Defendant acted in furtherance of the scheme(s) and conspiracy and intended to enrich himself and to varying degrees others of the conspiracy and enterprise.

## JURISDICTION AND VENUE

34. This Court's jurisdiction is based upon 28 U. S. C. §§ 1331 and 1332; in that Plaintiff is presently incarcerated in the State of Kentucky and the Defendant's are residents of or are located in or exist under the laws of the State of Florida. (It should be further noted that at all relevant times herein the Plaintiff was a resident of the State of Florida and upon release from prison will again be a resident of the State of Florida). The matter in controversy exceeds the sum of $100,000.00, exclusive of interests and costs.

11

35. This Court also has jurisdiction over this action pursuant to 28 U. S. C. § 1331 and 1367, in that the RICO claims arise under the laws of the United States, and the state-law claims are so related to the RICO claims that they are part of the same case and controversy.

36. Jurisdiction is further proper before this Court pursuant to the RICO statutes 18 U. S. C. § 1962 ( c ), and ( d ); and 18 U. S. C. § 1964 ( a ).

37. Jurisdiction is further proper pursuant to 15 U. S. C. § 78; 29 U. S. C. § 1132 ( e ) (1) and applicable principles of supplemental jurisdiction under 28 U. S. C. § 1367 ( a ).

38. Venue is proper in this district pursuant to 28 U. S. C. § 1391 ( a ), since the incarcerated Plaintiff is considered a resident of the Southern District of Florida; and most all acts and or inactions or omissions giving rise to the claims occurred in the Southern District of Florida.

39. Criminal Statutes violated by Defendants in course of the Racketeering Conduct; Bribery in violation of 18 U. S. C. 201; Mail Fraud in violation of 18 U. S. C. § 1341; Wire Fraud in violation of 18 U. S. C. § 1343; Conspiracy and Attempt to Commit Mail Fraud and Wire Fraud in violation of 18 U. S. C. § 1349; Obstruction of Justice, in violation of 18 U. S. C. § 1503, Obstruction of Justice of proceedings before departments, agencies, and committees in violation of 18 U. S. C. § 1505; Obstruction of Criminal Investigation in violation of 18 U. S. C. § 1510; Obstruction of state and local law enforcement in violation of 18 U. S. C. § 1511; Tampering with a witness in violation of 18 U. S. C. § 1512; Laundering of Monetary Instrument in violation of 18 U. S. C. § 1956; and Money Laundering in violation of 18 U. S. C. § 1957 et seq., and violations of Racketeering Organization in violations of 18 U. S. C. § 1962 ( c ) ( d ). These acts also include acts of perjury, conspiracy to commit perjury, and witness tampering and manipulation.

## THE MUNZ, REDLAND AND NOWELL RELATIONSHIP

40. On September 14, 1994, the Plaintiff was hired as Vice President of Defendant REDLAND. Initially Plaintiff's job responsibilities were to organize and manage the day to day inside operations of REDLAND, which included supervision of the office and some aspects of the field operations as well. Very quickly MUNZ, as sole owner of REDLAND, determined to expand the Plaintiff's role in the business.

12

41.   It was determined the Plaintiff would be responsible for the day to day operations of all five MUNZ entities which were: ( a ) The Redland Company, Inc.; ( b ) Redland Construction Company, Inc.; ( c ) Country Flyin, Inc.; ( d )Redland Park of Commerce, and ( e ) Redland Rock. For each of these entities the Plaintiff would oversee all aspects of; accounting, payroll, insurance, taxes, data processing, equipment financing, bank credit lines, review and approve invoices, along with all job costs, job estimating, and project management.

42.   Plaintiff's responsibilities included but were not limited to the following:

( a )   Plaintiff prepared estimates, take offs, pricing, preparation of bid documents, attend bid openings and other related legal bidding functions.

( b )   Plaintiff prepared contracts to be executed by clients and reviewed client contracts to be executed by REDLAND.

( c )   Plaintiff was responsible for the duties of a construction project manager, attended and chaired all preconstruction meetings for new contracts and held and attended regularly scheduled job meetings during the course of each project.

( d )   Plaintiff was responsible for all change orders, requests for change orders, requests for information, preparation and collection of monthly billing documents.

( e )   Plaintiff was responsible for all annual reporting, requirements for each entity set forth in ¶ 41, supra, including occupational licenses, contractors and all other licenses, property taxes, annual reports, and responses and reporting to all Governmental agencies.

43.   Plaintiff was also responsible for the coordination of legal professionals working on any litigation either brought by or against REDLAND including the interviewing and selecting of legal counsel. Preparing exhibits and other materials needed by such professionals. Consulting to some extent on legal strategy and suggesting witnesses or other relevant information.

44.   This was a much more complex set of responsibilities than originally bargained for. These were huge complex tasks which required the Plaintiff to draw upon his knowledge in multiple disciplines. Most of these areas were also the areas of the business that CEO and sole owner MUNZ

13

did not like to do or wish to do. This was a much different job description than the Plaintiff had first signed on for and with the dramatic increase in responsibility also came the need for a vastly different type of compensation.

45.     It took a very brief period of time until Defendant MUNZ realized the Plaintiff's value to REDLAND. It also did not take long for the Plaintiff and MUNZ to determine the Plaintiff would not shoulder such responsibilities without a much different and higher level of income.

46.     In mid 1995, Plaintiff and MUNZ made an agreement that the Plaintiff would be paid a percentage of gross sales for the increase in responsibilities he was carrying.

47.     MUNZ himself proposed that the Plaintiff would receive 8 - 10 % of gross sales. MUNZ also had several conditions to the new compensation plain which included:

a.     No other employee of REDLAND was to be told or in any way have knowledge of the payment arrangement between REDLAND and the Plaintiff.

b.     The Plaintiff was to develop a method where these compensation checks would not be written to himself but to a business entity.

c.     Payments were to be made to appear as vendor payments.

d.     The payments were to be paid monthly, calculated on gross sales or estimated gross income, either known or estimated for REDLAND.

e.     Payments were charged to various multiple vendors who worked as subcontractors or suppliers for REDLAND.

f.     Payments were to be shown as job costs for vendors so as to spread the cost of the compensation over all the jobs going on at time of payment.

48.     To accommodate the purpose and requirements as set forth in paragraphs 41 - 47 above, it was agreed that checks would be prepared in the following manner:

a.     Invoices for payables would be created for a selected vendor by generating an invoice based on past invoices or newly generated invoices.

b.     All checks were generated inside the accounting office and all checks were REDLAND three part checks which were printed on the tractor-fed computer impact printer in the accounting office.

c.     Immediately prior to printing the check a post-it note was affixed to the payee area

14

of the negotiable copy of the check so that it would cover the area of the check where the payee's name would be printed.

d.      When the printer would feed and print that check, all the amount, date, spelled out amount and invoice numbers would print on all three copies as normal.

e.      The name of the vendor would print on to the post-it note but would also create the two carbon copies with the vendor name on them as normal..

f.      The top, negotiable copy could then just have the payee, i.e.., NGI Marine typed in as the payee. The check now only needed a signature.

49.      The first 23 checks made to NGI Marine and made as described above were signed by MUNZ or T. MUNZ. Later the Plaintiff was made an authorized signatory on the account and the Plaintiff would sign checks.

50.      The first 23 checks were all in amounts close to $50,000.00 each and were fully printed to NGI Marine at the time they were signed by MUNZ or T. MUNZ. MUNZ authorized each of these payments which covered the period beginning November 29, 1997, and continuing thru June 23, 1999, equaled $1,129,664.17. Eventually by October of 2006 the grand total of these checks was $11,441,100.17, each and everyone which was authorized by and with the full knowledge and consent of MUNZ.

51.      As soon as this plan was implemented MUNZ and the Plaintiff realized they needed to do something about the bank statements which accounting personnel would review. The NGI Marine cancelled check copies would be problematic. It was determined the statement would be altered using a simple cut and paste process, then the statement would be copies, placed in the file and the original destroyed. This was done throughout all the years this plan was in effect.

52.      The purpose and underlying reasons that the payments were made in this manner were as follows:

a.      MUNZ felt that if other employees learned of the income being paid to the Plaintiff there would be disgruntlement as some people were with him much longer and paid no where near as much.

b.      MUNZ did not want anyone to know or realize the importance or status to the operation as, in his mind, this could undermine his position and authority.

15

c.    Payments made in this manner would have no matching federal tax (FICA) liability and no state or federal unemployment tax.

d.    There would be no payroll based premiums such as Workman's Comp. or other payroll based benefits.

e.    By charging this as a jobs costs the entire amount was a write-off as an expense and the business saved just as much or more by writing the cost off in this manner.

53.    This program was not a new concept at REDLAND. MUNZ had an already well established practice of paying employees "off the payroll" or "off the books." These terms meant that an employee got paid additional compensation that was not included in his payroll. The reason for this practice is to save taxes and payroll based premiums like Workman's Compensation. These payments are paid out of the "operating account" and the expenditure is charged as an "expense reimbursement" to the employee. MUNZ and REDLAND had fully established and authorized expense checks to several employees prior to September 1994, the date of Plaintiff's employment.

54.    REDLAND had a policy and procedure that employees would turn in an Expense Summary listing all expenses paid by that employee that were to be reimbursed. The employee was required to attach real receipts for all such expenses. These were legitimate expenses and their reimbursement was lawful and legitimate. REDLAND'S system of additional compensation was also shown on the expense report but had no back-up receipts because there were no valid expenses to have receipts for. This practice began with some 5 - 6 employees in 1994, and before, and by 2006, there was a list of over 30 employees that received additional compensation on a monthly basis.

55.    By the time the Plaintiff left REDLAND there were approximately 3 people receiving $1,500.00 per month in "off the books" compensation. Another nine people were receiving about $700.00 per month and another sixteen people were averaging about $500.00 per month. In addition to this, approximately eight people received annual bonuses of $25,000.00 per year (all tax free). These figures come to about a half million in annual unreported compensation which saves REDLAND approximately $100,000.00 per year.

56.    This practice has led to federal litigation centered on payroll in the United States District Court, Souther District of Florida, *ODELY v. REDLAND & MUNZ*, Case No.: 07-21760.

16

57.     The bottom line to the Plaintiff's involvement with REDLAND and MUNZ seemed to be a good working relationship.  MUNZ and the Plaintiff worked and communicated reasonably well.  The Plaintiff had a great deal of responsibility and was compensated well.  There were certain business practices that may have raised some eyebrows but nothing so terrible as to justify much concern, certainly nothing ever came up that would have made the Plaintiff think that MUNZ was unhappy with anything and certainly there was no evidence that MUNZ would ever claim the Plaintiff stole anything, let alone over $11 million dollars.

## REDLAND'S QUESTIONABLE CONDUCT

58.     One of the MUNZ owned business entities was called Country Flyin, which owned and operated two airplanes.  These planes had no particular business application to the REDLAND Company.  The planes were used to travel to and from MUNZ's privately leased island in the Bahamas "Foul Cay" and occasionally took MUNZ and others on hunting trips.  While these planes were not utilized in the business REDLAND still paid every cent of the cost to own and operate these planes.  Everything from fuel to airport fees was charged off as business expenses.  On the surface one might well say that it is MUNZ's business and money, he can do as he pleases - this would be true except these activities would be legally done only with after tax dollars on money taken by MUNZ as profits, income distribution or dividends but instead is done in a manner that evades the rightful taxes due on these amounts.  Like most Racketeers, MUNZ and his growing stable of Enterprise participants and conspirators seem to feel personally immune from laws involving taxes, fair trade and bidding practices and other frequent illegal activities.

59.     Defendant MUNZ holds a 99 year lease on an island in the Bahamas known as Foul Cay.  It is not readily known what the terms of the lease are but MUNZ has created his own private escape featuring a home fully self-supported; a landing strip (for his own two plane air-force) and other amenities.  All these improvements fully paid for by REDLAND.  All labor by REDLAND employees was 100% written off as job costs, meaning that not only did MUNZ evade the taxes on all such costs but he also lowered REDLAND'S taxable income and profits.

17

60.     This is no minor crime.  Over the years millions of tax dollars were systematically evaded using this common fraudulent business practice.  This policy of writing off distribution of profits as job costs has been used by Mafia owned construction companies for decades and for the most part seems almost ignored by law enforcement, and the Internal Revenue Services.

61.     These same job costing practices are also used by MUNZ to supply major benefits and necessities to MUNZ family members.  These "expenses" include automobiles, fuel, insurance, travel, entertainment, and nearly any expense imaginable.  Here again, there is nothing improper about MUNZ providing any of these things, but when that money is REDLAND'S untaxed profits upon which no tax has been paid; and then it is spent to the benefit of MUNZ and others with no taxes paid by the giver or the recipient; it is depriving the government of lawful and needed revenue and it is illegal.

62.     MUNZ and REDLAND violated the permit conditions of the Miami-Dade County Department of Environmental Resources Management ("DERM") by:

a.     Hauling excavated material from a lake excavation know as "Homestead Pit" to a location outside the permitted area.  REDLAND was sued by Florida Rock and Sand/ACI because the act of violating DERM Permit also violated the conditions of an Agreement between REDLAND and Florida Rock and Sand (ACI).  This suit is still pending.

b.     Over-excavating Homestead Pit by almost 30 feet, which caused DERM to issue a cease and desist order - later fining REDLAND $550,000.00 for their violation.  Then somehow, MUNZ convinced DERM to allow him to pay the fine at no interest and a payment of $25,000.00 per month for 22 months.

63.     The City of Homestead has terminated an agreement granting REDLAND a license to excavate the Homestead Pit due to the over-excavation; falsifying as-built documents for permit renewal; and civil theft from the over-excavation and subsequent selling of the excess material.

64.     MUNZ has numerous permit violations with Miami-Dade County Building Department for construction of office additions to REDLAND'S facilities at 23799 S.W. 167th Avenue; Homestead, Florida 33031.  Due to violations of the building and zoning codes Munz was required to move REDLAND to another location.  He has appealed this action to the Building

18

Department. During the Building Department's investigation of these matters, MUNZ lied numerous times about the use of this property in question to government officials. This is well documented in the records of said matter.

65.    There is, or was, an investigation by the FBI into MUNZ'S activities and dealings with the City of Homestead and more particularly what involvement MUNZ had in any bidding irregularities that had arisen concerning the purchase of certain land by MUNZ from an individual and then MUNZ's resell to the City of Homestead. These questions are:

a.    How did MUNZ learn that this particular piece of land was the only site on which the City of Homestead could effectively build a needed electrical substation?

b.    How was he able to make $200,000.00 to $250,000.00 on this property by selling it to the City?

c.    Was there any relationship between this land transaction and a *LOAN* that was made to a City Building Official who knew the City needed a very specific piece of property which MUNZ suddenly bought for no apparent reason?

66.    There is much interest or concern with the matter exactly how MUNZ was able to convince the City of Homestead's Management and elected officials to grant him the Exclusive Rights Agreement to excavate the "Homestead Pit" without the City of Homestead going through the normal "bidding process." This again is or was a major concern of the F. B. I. probe into MUNZ and REDLAND'S dealings with the City of Homestead.

67.    These matters above are not trivial, they are very serious. MUNZ, himself, tried an offer of approximately $7,000,000.00 to resolve some of the civil liability from some of these actions. In fact, these matters could force MUNZ and REDLAND out of business. The stakes were very high. The pressure was mounting on MUNZ and there was even more than minimal interest by federal law enforcement into MUNZ'S dealings and possible bid rigging and commercial bribery.

68.    When the Plaintiff explained his off the books compensation plan the F. B. I. and even to his own lawyers, Defendants ZIMMERMAN, NURIK and their respective firms, they seemed uncertain about MUNZ paying anyone a percentage of revenue for doing the Plaintiff's job. One of the best proofs of this type of relationship is found in certain arrangements MUNZ made with the Plaintiff's apparent replacement, James Easom:

19

a. The Plaintiff was an Executive Vice-President, James Easom was a lower level employee who worked in the Estimating Department and had neither the experience, ability or capability of the Plaintiff.

b. The Plaintiff had served as a Qualifier for REDLAND by virtue of his General Contractors Licensing from the State of Florida and Certified Underground Utility License from the State of Florida, along with his Miami-Dade County Engineering Licenses.

c. On August 14, 2006, MUNZ entered into a written agreement where Easom would occasionally be called upon as secondary Qualifier when needed.

d. Easom's salary was set at $1,925 weekly or $100,100.00 annually with all company benefits, two weeks paid vacation, reimbursement for all licensing and continuing education expenses, corporate Master Card, vehicle and expenses.

e. Easom was also compensated six percent of profits from 2002 forward, to be paid by May 30th of the following year. Payable as cash/check; "payable thru other means."

f. Retirement at 85% of salary for life.

g. REDLAND to pay off Mortgage loan on Easom's home, along with some repairs.

h. A $1,500.00 per month consulting fee.

69. These compensation instructions by MUNZ verify how he thinks and how he does things as detailed above he is paying Easom a percentage of profits but must pay it in cash "*or thru other means*." This is exactly the same manner he paid the Plaintiff. In the Plaintiff's case the other means was over $11.4 million in checks to NGI Marine, charged off on REDLAND'S books as job costs.

70. To demonstrate the MUNZ mentality the Plaintiff obtained an Invoice by Job Report for Mr. Easom's payments. On December 15, 2005, he received a check for $25,000.00 On the check description line was printed "*Do Not Discuss With Others*". This payment could be perfectly legal, but it is the procedure of hiding and mis-accounting that result in making an otherwise legal act into a criminal act, all to serve a long established mode of operation designed to break the law and enrich the law breakers.

20

71.     MUNZ was a master of hiding payments and job costing.  A true verifiable audit would doubtless find tens of millions in monies paid out improperly.

72.     Recently, the Miami-Dade Building Inspectors ticketed MUNZ for modifying REDLAND'S Buildings without a building permit.  This is their case number 20070208223-B.  In delaying and stalling MUNZ claimed that he was operating a nursery so he could claim all under Farms and Farming.  To add to the lie he had the shop areas filled with plants - when it comes to deceit, he and his co-conspirators stop at nothing - even the absurd.

73.     MUNZ needed to know how much the Plaintiff actually knew and what side would he be on.  MUNZ approached the Plaintiff who was open and candid.  The Plaintiff had nothing against MUNZ or REDLAND, he actually felt more like a partner than an employee; but he would not lie.  The Plaintiff told MUNZ he would never volunteer information but he would also not perjure himself.

74.     The Plaintiff knew a lot.  The Plaintiff knew the over-dredging had occurred but much more serious was the fact he knew the licensed surveyor was paid to prepare false as-built drawings of the survey.  This was a most serious problem and could cause multiple people and companies to lose licenses and be put out of business.  This could put people in prison and the Plaintiff had made it clear he would not lie or perjure himself for MUNZ or REDLAND.

## MUNZ CREATES NOWELL AS A FALL GUY

75.     On information and belief at this juncture MUNZ needed a fall guy.  MUNZ needed to appear as a victim, not a villain.

76.     MUNZ knew of the compensation plan he had between himself and the Plaintiff.  He knew how much was paid and the questionable methods used to print the checks and fix the bank statements.  To make the Plaintiff a fall guy all he had do was accuse the Plaintiff of stealing from REDLAND.  The check altering would make the Plaintiff look guilty as long as no one knew MUNZ authorized the checks and they were a legitimate part of Nowell's compensation.

77.     To start MUNZ used the last check the Plaintiff had prepared on October 5, 2006, made payable to Welling Construction for $148,684.12.  MUNZ knew most checks were payable

21

to the Plaintiff's company, NGI Marine, he reasoned the Welling check would be all the more damning because it cast aspirations on the Plaintiff's family as well. The Welling check's file copies were made out to Urbieta Oil for fuel expense.

78.     MUNZ approached Defendant SHARP and inquired into the rising cost of fuel expense. He also had her inquire as to whether the last payment had cleared the bank. MUNZ fully knew SHARP would find the real check was payable to Welling. Defendant SHARP did find the REDLAND check payable to Welling and charged to Urbieta Oil.

79.     MUNZ began orchestrating his plan through the manipulation of various Defendants in order to utilize them in his plan to turn Frederick Bradley Nowell, Sr., into the villain with no credibility.

80.     MUNZ had decided to use the "*off the books payroll*" to show the Plaintiff's alleged systematic embezzlement, he also reasoned that if he went after the Plaintiff civilly he could tie up Nowell's assets making it nearly impossible for him to defend himself and possibly MUNZ could win a judgment and make a few dollars in this scheme to defray the costs of this conspiracy.

81.     Despite the fact that the accusation was an outright lie and the Plaintiff had never stolen a dime, MUNZ decides to proceed with his plan. He decided to report all the payments to NGI Marine to law enforcement and to criminally prosecute the Plaintiff.

82.     MUNZ filed a civil suit against the Plaintiff seeking $2.8 million.

83.     MUNZ consulted with the Defendants McGUINNESS, MURAI et. al., P.A., FRESHMAN and F & F, LLC. These lawyers and law firms would be needed to properly litigate the civil matters as well as guide MUNZ through the criminal prosecution.

84.     The Government was encouraged to investigate the matter but there was nothing placed before a Grand Jury, for one reason, there was a problem trying to establish federal jurisdiction over what at best appeared as a state theft or embezzlement case. In February, 2007, the FBI obtained a search warrant for the Plaintiff's Parkland, Florida home. Agents secured several bags of evidence and computers from Plaintiff's home.

85.     On information and belief REDLAND and MUNZ paid substantial amounts totaling over $300,000.00 to Defendants FRESHMAN, F & F, McGUINNESS, MURAI et. al., SHARP and CONN for their respective roles in the overall conspiracy.

22

86.     On information and belief, the Defendants REDLANDS, MUNZ, T. MUNZ, FRESHMAN, F & F, McGUINNESS, MURAI et. al., SHARP and CONN communicated by mail, telefax, telephone, internet, conference and face to face with each other and others unnamed for the purpose of creating a subsequently initiating the conspiracy's plan to injure, discredit, defame and otherwise harm the Plaintiff in his name and in his business and in his income and assets and to thereby unlawfully and illegally enrich themselves.

87.     On information and belief, Defendants REDLAND and MUNZ have already shared, in various amounts, not less than $300,000.00 with the other conspirators Defendants as partial compensation for their respective roles in the scheme(s) against the Plaintiff.

88.     Subsequent to the actions the conspirators brought against the Plaintiff, he was compelled to retain counsel to represent himself in civil and criminal actions.

89.     Plaintiff retained Defendants ZIMMERMAN, JOSEPH et. al. NURIK, BUSCHEL, and Defendant R. R. A. to represent various actions brought against him.

90.     On information and belief, for reasons unknown and upon a date or dates uncertain, Defendants ZIMMERMAN, JOSEPH et. al. NURIK, BUSCHEL and Defendant R. R. A. joined in the conspiracy with the other co-conspirators.


### THE CONSPIRATORS - ENTERPRISE


91.     Defendants REDLAND; MUNZ; T. MUNZ; JERALD A. FRESHMAN; F & F; McGUINNESS; MURAI et. al.; SHARP; CONN; ZIMMERMAN; JOSEPH et. al.; NURIK; BUSCHEL; B. R. & A.; HOLLANDER; HOLLANDER FIRM; ROSEN; ROSEN'S FIRM; ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF; SUTTON; and BROWN; each and all did associate themselves together and formed an association-in-fact for the purposes of creating, implementing, modifying, operating, carrying out, promoting and continuing the "REDLAND Scheme." This association-in-fact was an "enterprise" within the meaning of RICO, 18 U. S. C. § 1961 (4). These Defendants operating with common goals and intentions and purposes did independently, jointly and severally and together with one or more other Defendants did enter upon a pattern of racketeering conduct to further the goal and objective of the enterprise. In this case the

23

enterprise is established or does coalesce with the proof of the pattern of racketeering activity similar to the concepts set forth in *United States v. Weinstein*, 762 F. 2d 1522, 1536-37 (11th Cir. 1983).

92.    In this complaint the "REDLAND Scheme" is defined as the goal and purpose(s) for which Defendant MUNZ and Defendant REDLAND assembled the various entities of the enterprise. The goal(s) and purpose(s) of The REDLAND Scheme are: ( i ) to create a "fall guy" of the Plaintiff to shift responsibility of certain business irregularities from Defendants Munz and REDLAND to the Plaintiff; ( ii ) to so discredit the Plaintiff in the event the Plaintiff were to be called to testify against Defendants Munz and REDLAND; ( iii ) to distract the focus and attention of certain investigations away from REDLAND claiming any oversights, irregularities and criminal conduct would injure from the alleged allegations against the Plaintiff; ( iv ) to place the Plaintiff in such a position that he would not have any resources with which to defend himself or otherwise confront the activities of the enterprise; ( v ) to recover monies legally paid to Plaintiff.

93.    To  implement the plans and goals of the enterprise  Defendants MUNZ and REDLAND would require the services of certain professionals who would be required to fully understand and function within the plans of the scheme and enterprise.

94.    At the outset the REDLAND Scheme required the services of Defendants McGUINNESS; MURAI, et. al.; J. FRESHMAN; F & F. LLC; SHARP & CONN. Each of these Defendants were paid for their participation, however, said participation in the scheme(s) and enterprise exceeded any kind of legitimate lawful professional services. All of these Defendants were required to undertake racketeering activities in order to perform what the REDLAND Scheme required. (As an example, Defendant McGUINNESS in consort with Defendants MURAI, et. al.; J. FRESHMAN; F & F, LLC given the task of creating and filing a civil suit against the Plaintiff and seek to encumber Plaintiff's, along with others assets and resources. That act alone is perfectly legal, assuming it was done with an earnest belief that the allegations were true. In this case, however, it further required Defendant McGUINNESS to suborned perjurious testimony in Broward County Circuit Court for the 17th Judicial Circuit. That made a legal act into an illegal act. It further was activity intending to obstruct the due and just administration of justice). In numerous similar ways this complaint will demonstrate how each of these professionals were corrupted into all these illegal racketeering predicate acts.

24

95.     Each of the named Defendants, by nature of their respective professions knew that certain of their actions and the known activities of certain Co-Defendants were clearly illegal, not to mention being in violation of all existing professional guidelines and regulations. Here again, this has often been the ploy of racketeers to get the professionals under their control and then once they have gone too far the professional then see they are past a point of no return.

96.     In furtherance of the goals and schemes of the enterprise, Defendants McGUINNESS, MURAI, et. al., Defendants J. FRESHMAN, and F & F, LLC, and Defendants MUNZ and REDLAND caused a civil complaint to be filed in the Circuit Court of Broward County claiming, inter alia, that the Plaintiff, his wife and step-son, stole in excess of 2 million dollars from The REDLAND Company, (which was amended to $11,441,000.00), over a nine year period; knowing these allegations to be untrue.

97.     The filing of the *REDLAND v. Nowell, et. al.* civil suit by Defendants McGUINNESS, MURAI, et. al., J. FRESHMAN, and F & F, LLC, MUNZ and REDLAND; because it was known to be false, fraudulent and based on known lies and deception was in violation of 18 U. S. C. § 1503 to wit, Obstruction of Justice before state proceedings.

98.     In furtherance of the goals and schemes of the enterprise Defendants McGUINNESS, MURAI, et. al., J. FRESHMAN, and F & F, LLC, MUNZ and REDLAND caused false and fraudulent allegations to be forwarded to the Florida Department of Professional Regulation, which information and allegations were intended to cloud the Plaintiff's professional contracting license and thereby impair Plaintiff's ability to work in his chosen profession. This false and fraudulent information was sent to the Florida Department of Regulation by mail and by telefax in violation of 18 U. S. C. § 1341 to wit, Mail Fraud; and 18 U. S. C. § 1343, Wire Fraud as well as 18 U. S. C. § 1349 to wit, Conspiracy and Attempt to Commit Mail Fraud, and Wire Fraud along with 18 U. S. C. § 1505, to wit, Obstruction of Proceedings before Department, Agencies and Committees.

99.     In furtherance of the goals and schemes of the enterprise, Defendants McGUINNESS; MURAI, et. al.; J. FRESHMAN; F & F, LLC; SHARP and CONN; MUNZ; and REDLAND worked together at times and independently at times did undertake various actions to cause banks and financial institutions with which the Plaintiff did business to lien, attach, garnish

25

and in other ways encumber the assets and deposits of the Plaintiff so as to deny him access to same based on legal actions and allegations which the Defendants knew or otherwise should have known were false, fraudulent and designed to injure the Plaintiff in his finances, reputation and otherwise.

100.    In furtherance of the goals and schemes of the enterprise and to proceed in false and contrived litigation Defendants McGUINNESS; MURAI, et. al.; MUNZ and REDLAND and possibly other of the Defendants caused an evidentiary hearing to be held on March 19 - 20, 2007, in the *REDLAND v. Nowell*, civil case.  This hearing was held in the Circuit Court of Broward County Florida before the Honorable Judge Dorian Damoorgian.  During this hearing Defendant McGUINNESS was representing Defendants MUNZ and REDLAND.  In this hearing Defendant McGUINNESS knowingly and intentionally adduced and suborned the taking of perjurious testimony, to wit: ( i ) Defendant McGUINNESS solicited Defendant SHARP's testimony to the substance of which stated Mr. Nowell's signature appeared upon the reverse [endorsement area] of each check which is completely false; (ii) SHARP was asked if Mr. MUNZ had <u>signed</u> any of the checks, to which SHARP evaded the question; (iii) the court asked McGUINNESS if MUNZ had signed any checks to the entities of NGI Marine or Welling Construction?  McGUINNESS answered the Court ***"Not One"*** .  The Court countered ***"Not One Check?"*** McGUINNESS replied ***"Not a Single One."***  Ms. McGUINNESS right there and then had in her possession each of the 23 checks signed by C. P. MUNZ and payable to NGI Marine.  These checks were in a stack in the courtroom. The proof of this is in the fact that McGUINNESS entered a summary spreadsheet instead of each separate check.  She represented that each check detailed on the spreadsheets were present in the stack of checks in the courtroom.  The 23 Munz signed checks to NGI Marine are the last 23 checks detailed in the summary spreadsheet that was ultimately entered during the testimony of SHARP; (iv) MUNZ testified that he had never heard of NGI Marine and never authorized any payment to NGI Marine.  This of course was completely false and was an intentional lie as were numerous other statements which will be presented at trial.

101.    Defendants FRESHMAN,  F  &  F, LLC, McGUINNESS, MURAI et. al., ZIMMERMAN, JOSEPH, et. al., NURIK, BUSCHEL, R. R. A., HOLLANDER, HOLLANDER FIRM, HOLLANDER, HOLLANDER FIRM, ANDREW HALL, ADAM HALL, H. L. H.; are all persons  or entities acting as lawyers and  law firms who were directly or indirectly hired,

26

compensated, extorted or compromised by MUNZ and REDLAND and became fully functional, independently operative parts of the association-in-fact or Enterprise.

102.   CHARLES "PINKY" MUNZ operates his family owned construction business the way many racketeering construction companies have operated over the years. In fact his business style is very stereo-typical of many of the old line mob companies that moved around lots of money, charged off everything to the business to avoid big tax bills, and payoff and bribe whomever you need to get the job done. This type of business ethic is readily apparent in that fact that MUNZ pays so many people "off the books" and tries to hide the true compensation of some of his higher more important employees.

103.   With the Criminal investigation underway and the civil action filed the Plaintiff was rendered almost defenseless. His wife is counseled to seek a divorce and ultimately ended their otherwise wonderful marriage. Mrs. Nowell and her son Robert are forced to continue operating Welling Construction which was made very difficult since they were also hit with pre-judgement writs of attachment and garnishment of bank accounts. This was not done because anyone thought Martha NOWELL or her son Robert Henning had done anything to MUNZ or REDLAND. This was done to hurt Frederick Bradley NOWELL, Sr. and to weaken or cut-off any avenue of help, support, or resource to fight back with.

104.   In addition to these legal actions Defendants McGUINNESS, MURAI, et. al., FRESHMAN and F & F, LLC undertook a course of conduct to provide the same false allegations to the Florida Department of Professional Regulation for the sole purpose of causing the Plaintiff's license as a contractor to be revoked. This action had no valid reason other than to further deliberately injure and harass the Plaintiff. The irony of this action is that at the same time this matter could well open for review all of REDLAND's licenses and qualifiers. This is very curious since there is absolutely no question that REDLAND and MUNZ violated a number of rules and laws in their over-dredging of the Homestead Pit which matter could literally revoke all of REDLAND's licenses as well as permanently close their operation forever. These are just some of the risks that MUNZ takes to injure anyone his perceives as a threat or that somehow displeases him, and his co-conspirators seem to have no problem in doing his bidding.

27

105.    There seems no end to the actions that MUNZ persuades the members of his Enterprise to undertake in his behalf.  While Plaintiff was still Vice-President of REDLAND he hired Attorney HOWARD HOLLANDER to represent REDLAND's interests in defending a law suit brought against by Florida Rock and Sand/ACI for breach of contract resulting from the excavation of the Homestead Pit.  It was NOWELL's job to hire and work with HOLLANDER on this defense and the two enjoyed a good working relationship.  At the point when NOWELL was no longer part of the REDLAND team, MUNZ persuaded HOLLANDER to cease his loyalty to NOWELL and participate in the scheme(s) to discredit NOWELL by using the false criminal accusations perpetrated by MUNZ and the other members of the Enterprise.

106.    The same circumstances  described in ¶ 105 also happened  with Attorney MICHAEL ROSE and WEINTRAUB, ROSEN & KING, P. A. as well with ADAM HALL, ANDREW HALL and the firm of HALL, LAMB & HALL, P. A.

107.    In the matter involving the HALL FIRM, they were hired to defend REDLAND in an action brought by the City of Homestead and the Miami-Dade County Department of Environmental Resource Management (DERM).  This case involved many of the matters that MUNZ wanted NOWELL to lie about and help cover-up, but NOWELL refused, and this led to all the current problems including the fraudulent criminal and civil action against the Plaintiff..

## PATTERN OF RACKETEERING - PREDICATE ACTS

108.    To understand the predicate acts and conduct against the Plaintiff it is necessary to understand that the Enterprise and Racketeering Activities pre-dates the matters involving this Plaintiff but are so inextricably entwined with the matters complained of herein that they must be understood.

109.    For years before the actions against Nowell commenced, MUNZ was already operating his business in a manner that employed certain racketeering conduct.  For clarity this will be referred to as the "Redland Enterprise" which for purposes herein shall be considered separate from REDLAND, the Defendant named herein.

28

110.    The Redland Enterprise existed and pre-dated the Plaintiff's starting employment in September 1994.

111.    The Redland Enterprise, in its early days consisted of, at least, Defendants MUNZ, T. MUNZ, REDLAND, SHARP and others unknown at this time. These herein named Defendants formed an association-in-fact for the purpose of their otherwise unlawful enrichment. This association-in-fact was an "enterprise' within the meaning RICO 18 U. S. C. § 1961 ( 4 ).

112.    The name "Redland Enterprise" is merely a reference tool of the Plaintiff and is not intended to imply that anyone ever used this name or that it had any meaning except as used herein.

113.    The Plaintiff commenced employment at REDLAND in September 1994.

114.    From his beginning at REDLAND Plaintiff learned that REDLAND and MUNZ had an established procedure for paying certain employees "off the books," meaning that the payments would be charged off in the accounting records as various job costs and would not be subject to payroll taxes, Workman's Compensation and other such payroll driven expenses.

115.    On information and belief both MUNZ and REDLAND had a history of obtaining favorable business assistance by virtue of acts of bribery in violation of 18 U. S. C. § 201.

116.    On information and belief certain jobs and contracts were obtained by REDLAND as a direct result of certain bribes and/or inside bidding information in violation of anti-trust laws and in violation of the Government Corruption Act.

117.    Plaintiff was hired by REDLAND as a result of an executive search company which sought executives with certain skills to fill REDLAND's specific requirements.

118.    Shortly after Plaintiff was hired MUNZ realized that Plaintiff was capable of handling considerably more responsibilities than originally planned.

119.    MUNZ and NOWELL entered into a private agreement whereby REDLAND would compensate the Plaintiff an amount equal to eight to ten percent of REDLAND's gross annual income.

120.    MUNZ and REDLAND continued certain racketeering conduct throughout the term of Plaintiff's employment which included the period beginning September 1994 and continuing until February 8, 2007. Certain of this racketeering activity was continuing around the Plaintiff and with the Plaintiff's knowledge yet did not directly effect the Plaintiff. These acts that do not specifically

29

effect the Plaintiff are presented only to the extend that they relate in various ways to the racketeering conduct brought against the Plaintiff.

121.    Beginning in 1996 - 1997 REDLAND and MUNZ began negotiations with the City of Homestead for the contract to excavate the "Homestead Pit." This was a very important and extremely lucrative contract. For the sake of judicial economy these matters are presented in the most basic of terms. Should the Court or any party require more elaborate or technical information the Plaintiff can provide more in the discovery process.

122.    The Homestead Pit (lake) was to be dug to a specific depth of 52.5 feet deep. For ecological and other reasons this project was never intended to be dug beyond said depth. The potential consequences for digging further could have vast ecological consequences and extremely severe financial costs.

123.    For the unlearned, there are a number of different facets to this type of project and they have multiple revenue potentials. REDLAND would make revenue from the actual work of digging the lake and would also generate income from the sale of the material removed from the lake. These income streams can and did amount to millions of dollars. The large amounts of money is why this contract was sought after and is also why the Plaintiff has faced this false prosecution.

124.    REDLAND was successful and receive the contract for this project which was REDLAND job 99-09. The actual job commenced in 1999.

125.    The primary employee on a project like this is the "drag-line" operator who was MICHAEL A. BROWN, a full time employee of REDLAND. This is the person who actually handles the heavy equipment used to dig the lake. This is a skilled position and requires a knowledgeable operator to complete the project. Brown eventually became a member of the Redland Enterprise.

126.    The reason Mr. BROWN is referred to as the "drag-line" operator is because the drag-line is literally the cable that connect the equipment to the bucket that removes the material from the bottom of the pit and this drag-line cable is the method used to determine the depth of the pit.

127.    Any operator on a project such as this understands the importance of monitoring the drag-line to be assured that the pit is not over-dug. BROWN clearly knew this.

30

128.    It is also important to understand that before digging commences the area of the pit is drilled and blasted to the right depth so that the material can in fact be removed.

129.    On information and belief, and supported by evidence and statements from others; MUNZ and REDLAND has always planned on digging the pit much deeper than what was called for. This action would generate literally millions of dollars of additional revenue. The Homestead Pit was excavated nearly 200% more than the contract stipulated.

130.    Contrary to statements made by MUNZ and REDLAND this was no accident, but rather a pre-meditated scheme to defraud and unlawfully enrich themselves and the members of the Redland Enterprise.

131.    It should be noted that REDLAND has already been assessed a $550,000.00 fine by the City of Homestead and there are still legal actions ongoing concerning these issues.

132.    This over-dredging was not something that was decided after the job was under way. In fact plans and actions had to be implemented from the onset. Evidence will be brought forth demonstrating that the pit was in fact drilled and blasted much deeper than it was supposed to be, creating these issues.

133.    The act of the deliberate over-dredging was a violation of Federal Fraud Statutes.

134.    This predicate act involved numerous counts of Mail Fraud, pursuant to 18 U. S. C. § 1341; and Wire Fraud, pursuant to 18 U. S. C. § 1343; to the extent that numerous letters, memos, documents, contracts, plans, orders and other business related documents were exchange by mail and other interstate carriers and by telephone and telefax. The dates and specifics of each document, fax, letters, contract plans orders, memos and other such business related documents would be presented at trial.

135.    Every aspect of the Homestead Pit Project was steeped in fraud and racketeering conduct and clearly was of great significance to the Defendants hereto.

136.    On information and belief MUNZ and REDLAND would sometimes resort to bribery in their efforts to obtain information on contracts or such other thing as they might desire. Plaintiff was instructed by MUNZ on one occasion to provide a check to Homestead Building and Zoning Official Tom Lambert in the amount of $20,000.00 this occurred in or around 2003. MUNZ

31

instructed the Plaintiff to "bury the check" which meant to write the payment off as a job cost to an existing job where it would not be questioned in the future.

137.    On information and belief the $20,000.00 pay off was in exchange for information on a piece of property which the City of Homestead required as the only proper site for an electrical sub-station. The City was going to have to acquire this property. Mr. MUNZ purchased this property and then was able to sell the property to the City for a substantial profit. This manner of making revenue and then reinvesting said funds in other activities of the Redland Enterprise violated RICO 18 U. S. C. 1961 et. seq. Further engaging in monetary transactions in property derived from specific unlawful activity violates 18 U. S. C. § 1957. The acts of bribery further violated 18 U. S. C. § 201.

138.    These types of transactions were not unusual at REDLAND and in fact were seemingly a Business as usual procedure. MUNZ would also disguise certain types of pay-offs, bribes, and incentive payments by making them as mortgage payment (or pay-offs) of the recipient's home or other property.

139.    The above transactions and predicate acts of racketeering conduct are relevant because they were all matters that were known of by the Plaintiff and that the Plaintiff, by nature of his position, was required to have a working knowledge of. These are the items about which MUNZ was most concerned and desperate to keep quiet and to render any testimony Nowell might offer as not credible. This is the motive behind Munz making these false charges and the reason for everything that has happened.

140.    Plaintiff was responsible for hiring Defendant HOLLANDER and the HOLLANDER FIRM to represent and defend REDLAND in a breach of contract suit brought against REDLAND by Florid Rock and Sand/ACI for breaching a contract that had to do with the Homestead Pit affair.

141.    Plaintiff was responsible for hiring Defendant ROSEN and the firm of WEINTRAUB, ROSEN & KING, P. A. to also represent and defend REDLAND in the suit brought against REDLAND by Florida Rock and Sand/ACI. This was associated with the Homestead Pit.

142.    Plaintiff was responsible for hiring Defendants ANDREW HALL, ADAM HALL and HALL, LAMB AND HALL, P.A. to represent and defend REDLAND in a suit brought against

32

REDLAND by the City of Homestead and further to defend REDLAND in Cease and Desist Action brought against REDLAND by Miami-Dade County Department of Environmental Resource Management (DERM).

143.    It was the Plaintiff's position to work with Defendants HOLLANDER; HOLLANDER FIRM; ROSEN; WEINTRAUB, ROSEN, & KING, P.A.; ANDREW HALL, ADAM HALL, H. L. H.; in providing them with the information, evidence, support material, and general information needed by counsel in their representation of REDLAND and to make sure they were trained and educated to the specific terminology and facts required to properly defend REDLAND. The Plaintiff was to manage, organize, and coordinate whatever the lawyers required in their respective litigations. The Plaintiff was also required on numerous occasions to testify in behalf of REDLAND.

144.    Plaintiff was also responsible for coordinating any access these attorneys required to certain employees or affiliates of REDLAND that might be required to testify on behalf of REDLAND.

145.    Defendants ADAM HALL, ANDREW HALL and H. L. H., were further retained to assist in matters dealing with Defendant RATCLIFF's deliberate falsifying of the "as-built surveys" for the Homestead Pit which were prepared at the direction of MUNZ so that they could be utilized by MUNZ to obtain renewed DERM permits. These same Defendants were responsible for assisting in the preparation of Defendant BROWN's testimony who was the drag-line operator on the digging of the Homestead Pit. Finally these same Defendants were also responsible for dealing with the Florida Licensing Board Complaint brought against Defendant RATCLIFF by EAS Engineering (Edward A. Swakon) who filed a complaint with the State of Florida Licensing Board over the deliberate false "as-built surveys" of the Homestead Pit.

146.    Obviously, from all the foregoing it is readily apparent that the Plaintiff knew a great deal about all of the issues that were outstanding against REDLAND. MUNZ had placed the Plaintiff in a position whereby he would be able to coordinated the legal strategy and work directly with counsel. The Plaintiff had a good and open relationship with all the retained counsels and had selected and hired them for their various roles.

33

147.   The Plaintiff also knew too much if he were to become disloyal to MUNZ and REDLAND. This was obviously on MUNZ's mind a great deal because he finally brought this concern directly to Plaintiff Nowell. Munz literally asked Nowell whether or not he would lie about some of the things Plaintiff had come to know, if he were compelled to testify. Nowell explained to MUNZ that he would never voluntarily say anything to harm MUNZ or REDLAND; however, he also made it clear that he would not lie, he would not perjurer himself.

148.   Sometime subsequent to February 8, 2007 Plaintiff came to understand that Defendants HOLLANDER; HOLLANDER FIRM; ROSE; WEINTRAUB; ANDREW HALL; ADAM HALL; H. L. H.; and RATCLIFF; had become participating members of the Redland Enterprise and were sharing in the activities and revenues thereof.

149.   On information and belief, on or about the latter part of 2006 or at least no later than February 2, 2007 MUNZ and REDLAND retained the services of JERALD A. FRESHMAN and FRESHMAN AND FRESHMAN, LLC to provide legal services for REDLAND. Subsequent thereto Defendants FRESHMAN and F & F, LLC. became member of and participated in and shared the revenues of the racketeering conduct of the Redland Enterprise.

150.   On information and belief, on or about latter part of 2006 or at least no later than February 2, 2007 MUNZ and REDLAND retained the services of LYNETTE EBEOGLUE McGUINNESS and MURAI, WALD, BIONDO, MORENO & BROCHIN, P.A. to provide legal services for REDLAND. Subsequent thereto Defendants McGUINNESS and MURAI became members of and participated in and shared the revenue of the racketeering conduct of the Redland Enterprise.

151.   On information and belief at some point on or before February 2, 2007 the C. P. A. Firm that Defendant SHARP was a party to and employee of became CONN & SHARP, C. P. A. and this is the firm that was retained by REDLAND. At all relevant times hereto Defendant SHARP was an employee of CONN & SHARP, C. P. A. Defendant CONN is by reference and participation a member of the Redland Enterprise.

152.   At some point in time before February 8, 2007 Defendant MUNZ on behalf of himself and REDLAND and with the assistance of Defendants FRESHMAN, F & F, LLC,

34

McGUINNESS and MURAI provided information and made allegations to the State Attorney's Office and/or the Federal Bureau of Investigation and/or the office of the Untied States Attorney to the effect that the Plaintiff had stolen or embezzled money from REDLAND in an amount equal to $2.8 million dollars, which amount was subsequently amended to be in excess of $11.4 million dollars over a period from 1997- 2006.

153.    As a result of the false and fraudulent allegations, agents of the F. B. I. Obtained a search warrant for the Plaintiff's home and on February 8, 2007 executed said warrant. There was no arrest made incident to the search and no charges filed for months after the search.

154.    The substance of the false statements made by members of the Redland Enterprise against the Plaintiff was that some 173 checks drawn on the operating account of REDLAND over a nine (9) year period were never know of or authorized by MUNZ and represented stolen or embezzled funds;  when in truth and in fact said checks, payable to Plaintiff's business NGI Marine represented the 8% - 10% of gross revenues that MUNZ had agreed to pay the Plaintiff.

155.    On or about February 12, 2007 REDLAND with the assistance of FRESHMAN, F & F, LLC., McGUINNESS, and MURAI filed or caused to be filed a civil suit; *Redland v. Frederick B. Nowell, Sr., et. al.;* this suit was originally first filed in the Circuit Court of Dade County, Florida, but was then dismissed and was filed in the Circuit Court of Broward County, Florida, case number 07003164 CACE 12.  The suit also names Plaintiff's wife Martha G. Nowell, her son Robert C. Henning, III and their business Welling Construction, Inc.  This complaint essentially mirrors the accusations of the criminal case. At time of filing REDLAND sued for $2.8 million which was late amended to over $11.4 million.

156.    Upon the filing of the civil suit the Plaintiff to the civil suit REDLAND sought and were awarded pre-judgement writs of garnishment for certain accounts at Wachovia Bank. REDLAND was also able to file attachments on certain assets and holds on certain bank accounts such as the accounts for Welling Construction and Robert C. Henning, II and his wife Christina Henning (who was not named in any action).  REDLAND was able to lien and attach the Nowell residence, a corporate vehicle and file an $11.4 million dollar abstract judgement against the Plaintiff after Plaintiff's change of plea was accepted and he was sentenced.

35

157. On march 19 and 20, 2007 hearings were held in the civil case. During the hearing MUNZ asserted under oath that he had never heard of NGI Marine; Attorney McGUINNESS asserted before the Court that MUNZ had never heard of and never authorized any checks to be written to NGI Marine. When Judge Dorian Damoorgian heard that there were 173 checks to NGI Marine for more than $11.4 million he challenged the statement that MUNZ never authorized even one check over the nine (9) year period, the judge asked McGUINNESSS, "not a single check?" to which McGUINNESS replied' "Not a single one." At that moment in time there was a spreadsheet listing all the checks and the complete stack of checks in the courtroom payable to NGI Marine and at that moment McGUINNESS knew she had 23 checks in the courtroom, payable to NGI Marine and signed by CHARLES P. MUNZ.

158. At the same hearing SHARP testified that all the REDLAND checks to NGI Marine were signed by Plaintiff Nowell. She further testified that the reverse (endorsement) side of all the checks had Mr. Nowell's signature on that back side. None of the checks bear Nowell's signature on the back side. She further testified that no NGI checks were signed by Mr. MUNZ. SHARP also testified that no evidence of the $11.4 million dollars embezzlement ever showed up or was detected before the fall of 2006; despite the fact that she had acknowledged in another place that she had located two different NGI checks and discussed them with Mr. MUNZ and that said checks were actually loans that NGI Marine and/or Nowell repaid. SHARPS statements concerning MUNZ's knowledge and authorization of NGI checks were classic perjury and SHARP fully well knew the statements she was making were lies.

159. All of he statements by SHARP were perjurious and were solicited from her by McGUINNESS who suborned the perjury.

160. Defendants MUNZ, REDLAND, FRESHMAN, F & F LC, McGUINNESS, MURAI, SHARP and CONN either committed perjury as set forth above or suborned perjury as set forth above either of which violated 18 U. S. C. § 1503 obstruction of Justice; § 1511 obstruction of justice in an ongoing criminal matter; § 1511 obstruction of justice in a matter of state and local law enforcement; § 1512 to the extent that certain of the witnesses such as SHARP and MUNZ had to be coached in their testimony which is an act of tampering with a witness as well as a victim.

36

161.    On various dates subsequent to February 8, 2007, during the process of preparing and filing the aforementioned civil lawsuit against the Plaintiff; Defendants MUNZ, REDLAND, FRESHMAN, F & F LLC, McGUINNESS, MURAI, SHARP and CONN each did transmit and cause to be transmitted notes, memorandum, letters, writings, documents, drafts, pleadings, records, financial documents and other material to and from one another, knowing same to contain false and fraudulent information, averments, assertions, allegations, all with the specific intent and purpose to obscure and obstruct the proceedings in violation of 18 U. S. C. § 1341 relating to mail fraud to the extent that much of this false and fraudulent material traveled by fax, e-mail and other forms of electronic media said transmission of which is in violation of 18 U. S. C. § 1343 wire fraud.

162.    On various dates subsequent to February 8, 2007 Defendants REDLAND, MUNZ, FRESHMAN, F & F LLC, McGUINNESS, and MURAI did cause false and fraudulent accusations and facts to be transmitted and or sent from their business address in South Florida to the Department of Professional Regulation in Tallahassee, Florida which false and fraudulent material was prepared and sent for the sole purpose of causing Plaintiff's various professional licenses to be revoked. These named Defendants knew said material was false and fraudulent and did cause same to be delivered and or transmitted by phone, telefax, e-mail and U. S. Mail in violation of §§ 1341 mail fraud and 1343 wire fraud. These fraudulent material were prepared and sent for the sole purpose of influencing the State of Florida to revoke Plaintiff's professional licenses. This act further violated 18 U. S. C. § 1505 obstruction of Justice before departments or agencies.

163.    On or about February 10, 2007 Plaintiff retained Defendant ZIMMERMAN and JOSEPH et. al. to represent him in the investigation being done by the F. B. I. At this time no charges or allegations had been brought against the Plaintiff. The Plaintiff gave ZIMMERMAN and JOSEPH et. al a $25,000.00 retainer and a few days later placed $150,000.00 in their trust account. The hiring of these Defendants was done prophylactively as no litigation was yet pending.

164.    Not long after hiring ZIMMERMAN and JOSEPH et. al. the Plaintiff was served with the REDLAND civil suit; at this same time ZIMMERMAN opened discussions with AUSA Joan Silverstein on the matter of the FBI search and where the criminal investigation was headed. At the first meeting with ZIMMERMAN the Plaintiff explained the payroll agreement with MUNZ and REDLAND. Plaintiff explained in detail how he was paid the 8% to 10% of REDLAND's gross

37

income as well as how the 173 checks were prepared.  Plaintiff also explained that the first year or two of this payment plan the Plaintiff had not yet been given check signing authority.  Plaintiff explained that MUNZ and/or his wife T. MUNZ had signed all the initial checks for payment under the agreement he had with MUNZ and REDLAND.  As it turns out these first 23 checks were signed by a MUNZ and these checks totaled in excess of $1.1 million dollars.

165.    From the onset of these matters Plaintiff Nowell has always contended that the checks signed by MUNZ were the best evidence that MUNZ and NOWELL did have a percentage of revenue compensation plan.  Further since the MUNZ signed checks were made payable to NGI Marine (Nowell's Company), these checks proved MUNZ was lying about not having heard of or authorized checks to NGI Marine.  ZIMMERMAN unfortunately, told the Plaintiff that the MUNZ signed checks, if they existed, were too old to be subpoenaed from the bank and therefore were most likely unavailable to the defense.

166.    In April 2007 ZIMMERMAN advised the Plaintiff that he was charged with a single count of mail fraud.  ZIMMERMAN further advised that the government told him that none of the 173 checks were signed by MUNZ.  No charges existed at this time.

167.    Because the Plaintiff was led to believe that he could not produce evidence to the contrary; ZIMMERMAN advised the Plaintiff he should consider attempting to get as good a plea deal as possible. (The Plaintiff did not know that ZIMMERMAN was then lying about charges being filed).

168.    During the week of April 23, 2007 ZIMMERMAN presented Plaintiff with a plea agreement which he said represented the best deal available.

169.    At the time ZIMMERMAN presented the plea agreement ZIMMERMAN has already told him that the charge of mail fraud had been filed.  The plea agreement also intimated that the charges were filed and the Plaintiff had no knowledge that at that time no charges existed.

170.    On information and belief, at the time of the presentation of the plea agreement AUSA Joan Silverstein had the exculpatory MUNZ signed checks in her possession.

171.    On information and belief MUNZ and REDLAND by and through any number of their herein named co-defendants, were able to so compromise the integrity of ZIMMERMAN and JOSEPH et. al., and were able to convince, persuade, bribe, threaten and or possibly coerce them to

38

abandon the Plaintiff's interest and manipulate the Plaintiff Frederick B. Nowell, Sr. To enter into a guilty plea to a criminal charge of mail fraud which NOWELL knew he did not commit.

172.     On or about May 4, 2007 ZIMMERMAN persuaded Plaintiff to fully execute a plea agreement, pleading guilty to the single count of mail fraud. On May 4, 2007 when Plaintiff and ZIMMERMAN signed said plea agreement, there were no criminal charges of any kind pending against the Plaintiff.

173.     ZIMMERMAN completely lied with the specific intent to deceive the Plaintiff for the purpose of convincing the Plaintiff to enter said plea, knowing no charges yet existed.

174.     On or about April 23, 2007 AUSA Silverstein did supply to ZIMMERMAN and JOSEPH et. al. a document purporting to be a plea agreement to be executed by the Plaintiff and ZIMMERMAN which document indicated the Plaintiff was charged with one count of mail fraud while both Silverstein and ZIMMERMAN then and there well knew no such charge yet existed against the Plaintiff. The knowing sending and receiving of this document by mail was a violation of 18 U. S. C. § 1341 mail fraud.

175.     On or about May 4, 2007 ZIMMERMAN did cause to be sent by mail a copy of the Plea Agreement "fully signed by myself and Bradley Nowell," knowing same to represent that Plaintiff was then charged with the crime and further knowing that no such charges then existed, and causing such fraudulent document to be delivered by mail did willfully and intentionally violate 18 U. S. C. § 1341 mail fraud.

176.     To the extent that drafts and revisions of this document were sent back and forth between Silverstein and ZIMMERMAN by telefax and further between ZIMMERMAN and the Plaintiff by telefax, said transmissions by telefax are separate violations of 18 U. S. C. § 1343 wire fraud.

177.     Defendants ZIMMERMAN and JOSEPH, et. al. undertook a deliberate and willful course of conduct to cause the Plaintiff to execute a plea agreement on May 4, 2007 knowing at that time that no such charges existed and that no case number existed as neither an indictment nor criminal information then existed.

39

178.   This fraudulent use of the mails and wires and the further use of the Office of the United States Attorneys Office to perpetrate said scheme and fraud was a willful act of Obstruction of Justice in violation of 18 U. S. C. § 1503 by ZIMMERMAN.

179.   On May 29, 2007 a one count criminal information charging mail fraud was filed against the Plaintiff.

180.   On June 5, 2007 Plaintiff was arraigned on the criminal information pleading not guilty. The Plaintiff questioned ZIMMERMAN about pleading not guilty when he believed he pled guilty by his on a plea agreement on May 4, 2007.

181.   On June 5, 2007 the Magistrate signed the Standing Discovery Order which confused the Plaintiff because on May 4, 2007 he believed he signed a plea agreement that waived the Standing Discovery Order.

182.   The plea of not guilty and a request for a jury trial along with standing silent when the Standing Discovery Order was made were both acts by ZIMMERMAN of Obstruction of Justice in violation of 18 U. S. C. § 1503.

183.   On June 21, 2007 Plaintiff changed his not guilty plea to a guilty plea.

184.   Commencing with Plaintiff's plea on June 21, 2007 and continuing through the present Defendants FRESHMAN, F & F LLC, McGUINNESS, MURAI, HOLLANDER, HOLLANDER FIRM, ROSEN, WEINTRAUB, ANDREW HALL, ADAM HALL, H. L. H., MUNZ and REDLAND have used the occasion of Plaintiff's plea to fully discredit the Plaintiff in other legal actions pending against REDLAND. This was the entire purpose of MUNZ et. al. charging the Plaintiff in the first place. It was always the primary goal to render Nowell unable to testify and thereby harm REDLAND, however each of these Defendants knew or should have know that the charges against the Plaintiff were contrived, false, and fraudulent and were intended to obstruct justice in violation of 18 U. S. C. §§§§ 1503, 1510, 1511 an 1512.

185.   At the same time ZIMMERMAN and JOSEPH et. al. were compromised (see ¶ 171 supra) they became active members of the Redland Enterprise.

186.   On August 17, 2007 the Plaintiff was compelled to participate in a deposition in the civil cases; *Florida Rock and Sand/ACI v. The Redland Co., Inc.* and *City of Homestead v. The Redland Company, Inc.* While being questioned he was handed the stack of checks that were

40

suppose to be the checks he used to embezzle from Redland. This was the first time Nowell had seen and touched the Redland checks. While looking through them he found the 22 check signed by Defendant MUNZ and the 1 check signed by Defendant T. MUNZ.

187.   After the hearing Plaintiff contacted ZIMMERMAN and told him he had seen the MUNZ signed checks and they were available and that he wanted ZIMMERMAN to start the procedure to have his plea withdrawn so that he could proceed to trial and now prove he didn't steal anything. This was actually relayed to ZIMMERMAN through an associate Daniel Forrest.

188.   When ZIMMERMAN finally spoke to the Plaintiff he advised him that "It's too late to take your plea back." ZIMMERMAN further advised the Plaintiff that he made a mistake and didn't do discovery and therefore he couldn't go back in and try to withdraw the plea.

189.   After stating he couldn't do anything he ceased talking to Nowell and for days would not return Nowell's calls.

190.   Plaintiff prepared a pro se Motion to Withdraw Plea and also prepared a pro se Motion to Withdraw ZIMMERMAN as his attorney and have the Court appoint new counsel. The Court set the motions for a hearing to be held on September 6, 2007. The sentencing hearing was scheduled for September 11, 2007.

191.   At the September 6, 2007 hearing the Court denied the motion to remove ZIMMERMAN from the case and denied the pro se motion to withdraw the plea. There is confusion in the record as to whether the pro se motions were denied by the District Court or Stricken by the Court. The record indicates that they have been both denied and stricken. The Court also ordered ZIMMERMAN to file the Motion to Withdraw the Plea and implied that he should only file what ZIMMERMAN believed had merit and was true.

192.   ZIMMERMAN drafted a motion to withdraw the plea that mirrored the content of the Plaintiff's pro se motion with the exception that ZIMMERMAN deleted two paragraphs in which the Plaintiff mentioned ZIMMERMAN'S failure to review any discovery.

193.   On ZIMMERMAN'S recommendation Plaintiff hired Defendants NURIK, BUSCHELL and R. R. A. to argue the change of plea hearing on September 11, 2007. These same three defendants also handled the preparation and filing of the Plaintiff's direct appeal. Sometime

41

subsequent to their being retained they were also compromised or coerced into joining the Redland Enterprise in its efforts against the Plaintiff and in behalf.

194.    Defendants NURIK, BUSCHEL, R. R. A. prepared the Plaintiff's direct appeal and raised only one issue on appeal being whether or not the District Court abused its discretion in denying Plaintiff's Motion to Withdraw his Plea, based in newly available evidence.

195.    The Plaintiff completely trusted Appellate counsel to correct this most unjust and unfair conviction. There was much evidence of the ineffectiveness of defense counsel that they completely chose to ignore. Plaintiff was actually innocent of this crime and yet was manipulated into a plea by lies, threats and coercion. Appellate counsel completely wasted Plaintiff's direct appeal at the behest of the Redland Enterprise.

196.    The acts of Defendants ZIMMERMAN, JOSEPH et. al, NURIK, BUSCHEL, and R. R. A., in conspiracy with REDLAND, MUNZ and the entire Redland Enterprise failed to use their talent and the evidence to properly represent the Plaintiff and their failures put together indicate these defendants violated 18 U. S. C. § 1503 and § 1510 dealing with Obstruction of Justice.

197.    REDLAND and MUNZ have been consistently and regularly using financial transactions such as "off the books payroll" and charging personal expenses of REDLAND's books as job costs as a means to evade and defeat the payment of taxes. MUNZ does this on large scale basis, for example, the complete funding of the development of his private island "Foul Cay" and his two plane air force to facilitate travel to and from the island. These hundreds upon hundreds of such transactions are continuing violations of 26 U. S. C. § 7201 for attempt to evade or defeat tax; 26 U. S. C. § 7202 for willful failure to collect or pay over tax; 26 U. S. C. § 7203 for failure to file a return, supply information, or pay tax; 26 U. S. C. § 7204 for making or causing to be made a fraudulent statement or failure to make statement to employees.

198.    While not a major part of the conspiracy ZIMMERMAN and JOSEPH, et. al., advised Nowell that if he didn't plea he would be charged with 173 counts of "embezzlement" and faced twenty years on each count which could represent a consecutive sentence of 3,460 years. This was minor compared to the main two of coercion which was the constant threat that if Nowell didn't plea and do what he was told they would arrest his wife and stepson. This threat was the greatest determinant of all.

42

199.    While most of the Defendants hereto maintain high profiles as attorneys, accountants or business owners, there are a few people that exist under the radar. Defendant BROWN is one of those. As discussed supra he was the drag-line operator on the Homestead Pit. At all relevant times he was and is an employee of REDLAND. His relevance to this case are the lies and stories he was schooled by MUNZ and others to tell in Court and in depositions. BROWN has been directed to lied about the over-digging of the Homestead Pit and to attempt to make the over-digging seem like and accident rather than a premeditated multi-million dollar scheme by the Redland Enterprise. These events and details are some of the very same lies and deceptions that Nowell refused to be a part of which caused this whole chain of events. This is the material that MUNZ was willing to destroy the Plaintiff over.

200.    The Homestead Pit and the testimony of BROWN was the primary concern of ADAM HALL and ANDREW HALL and H. L. H. They are the firm that has the full knowledge of the real facts concerning the over-dredging and also the phony stories of BROWN and others that have been willing to lie for MUNZ and for the Redland Enterprise.

201.    Another player in the Homestead Pit is Defendant RATCLIFF who is the Redland employee responsible for preparing the phony "as-built" surveys of the Homestead Pit. His explanations for the errors in the "as-built" drawings are ridiculous as BROWN's excuses for the over-dredging. Both BROWN and RATCLIFF have been schooled and paid by MUNZ to lie over these most serious issues.

202.    Defendant SUTTON was and is an employee of REDLAND. On September 13, 2007 MUNZ directed SUTTON to go to the home of the Plaintiff's stepson Robert C. Henning, III and hi wife Christina J. Henning and their (at that time) nine month old son. SUTTON was sent there for the purpose of terrorizing and threatening Henning's wife. This event is fully documented by the Palm Beach County, Florida Sheriff's Office Case No. 07119930. This event took place on the specific instructions of MUNZ and shows a good example of the character and thought processes that Mr. Munz uses in making decisions. When SUTTON approached Mrs. Henning he told her that he needed to come inside her home to see what was it because his boss now owned or soon would own their home. This was a referral to Mr. Henning being named in REDLAND's suit against the Plaintiff.

43

## COUNT ONE RICO

203.   Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 202 as if fully set forth herein.

204.   At all relevant times FREDERICK B. NOWELL, Sr. was a "person" within the meaning of RICO 18 U. S. C. §§ 1961 ( 3 ) and 1964 ( c ).

205.   At all relevant times Defendants REDLAND; MUNZ; T. MUNZ; J. FRESHMAN; F & F, LLC; McGUINNESS; MURAI, et. al.; SHARP; CONN; ZIMMERMAN; JOSEPH, et. al.; NURIK; BUSCHEL; R. R. A.; HOLLANDER; HOLLANDER FIRM.; ROSEN; WEINTRAUB, ROSEN & KING, P.A.; ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF; SUTTON; BROWN were all "persons' within the meaning of RICO, 18 U. S. C. §§ 1961 ( 3 ) and 1962 ( c ).

206.   At all relevant times Defendants REDLAND; MUNZ; T. MUNZ; J. FRESHMAN; F & F, LLC; McGUINNESS; MURAI, et. al.; SHARP; CONN; ZIMMERMAN; JOSEPH, et. al.; NURIK; BUSCHEL; R. R. A.; HOLLANDER; HOLLANDER FIRM; ROSEN; WEINTRAUB, ROSEN & KING, P.A.; ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF; SUTTON; BROWN formed an association-in-fact for the purpose of injuring the Plaintiff in his person, property, reputation, and business. This association-in-fact was an "enterprise" within the meaning of RICO 18 U. S. C. § 1961 ( 4 ).

207.   At all relevant times, this enterprise was engaged in and its activities affected, interstate and foreign commerce, within the meaning of RICO 18 U. S. C. § 1962 ( c ).

208.   At all relevant times Defendants REDLAND; MUNZ; T. MUNZ; J. FRESHMAN; F & F, LLC; McGUINNESS; MURAI, et. al.; SHARP; CONN; ZIMMERMAN; JOSEPH, et. al.; NURIK; BUSCHEL; R. R. A.; HOLLANDER; HOLLANDER FIRM; ROSEN; WEINTRAUB, ROSEN & KING, P.A.; ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF; SUTTON; BROWN and others yet unnamed associated with this enterprise conducted or participated directly or indirectly,  in the  conduct  of  the enterprise's  affairs through a  "pattern  or  racketeering activity" within the meaning of RICO 18 U. S. C. § 1961 ( 5 ) in violation of RICO, 18  U. S. C. § 1962 ( c ).

209.    Specifically, at all relevant times Defendants REDLAND;  MUNZ;  T. MUNZ;
J. FRESHMAN; F & F, LLC; McGUINNESS; MURAI, et. al.; SHARP; CONN; ZIMMERMAN;
JOSEPH, et. al.; NURIK; BUSCHEL; R. R. A.; HOLLANDER; HOLLANDER & FIRM; ROSEN;
WEINTRAUB, ROSEN & KING, P.A.; ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF;
SUTTON;   BROWN engaged in "racketeering  activity;  within the meaning of 18 U. S. C.
§ 1961 ( 1 ) by engaging in the acts set forth above.  The acts set forth above constitute a violation
of one or more of the following statutes: violation of the provision of 18 U. S. C. § 201 relating to
bribery; 18 U. S. C. § 1341 relating to mail fraud; 18 U. S. C. § 1343 relating to wire fraud;  18 U.
S. C.  § 1503 relating to obstruction of justice;  18 U. S. C.  § 1510 obstruction of criminal
investigation;   18 U. S. C. § 1511 relating to obstruction of state or local law enforcement;
18 U. S. C. § 1512 relating to tampering with witness; 18 U. S. C. § 1951 interference with witness;
18 U. S. C. § 1956 relating to laundering of monetary instruments; 18 U. S. C. § 1957 relating to
engaging in monetary transactions in property derived from specified unlawful activity. Defendants
REDLAND; MUNZ; T. MUNZ; J. FRESHMAN; F & F, LLC; McGUINNESS; MURAI, et. al.;
SHARP; CONN; ZIMMERMAN;  JOSEPH, et. al.; NURIK; BUSCHEL; R. R. A.; HOLLANDER;
HOLLANDER FIRM.; ROSEN; WEINTRAUB, ROSEN & KING, P.A.; ANDREW HALL; ADAM
HALL; H. L. H.; RATCLIFF; SUTTON; BROWN each committed and/or aided and abetted the
commission of two or more of these acts of racketeering activity.

210.    The acts of racketeering activity referred to in the previous paragraph constituted a
"pattern of racketeering activity" within the meaning of 18 U. S. C. § 1961 ( 5 ).  The acts alleged
were related to each other by virtue of common participants, a common victim (the Plaintiff), a
common method of commission, and the common purpose and common result of injuring the
Plaintiff and enriching or attempting to enrich the Defendants and the enterprise at the Plaintiff's
expense while concealing the enterprise's activities. The actions complained of commenced in the
fall of 2006, early 2007, and continue at this time and threaten to continue longer.

211.    As a result of Defendants REDLAND; MUNZ; T. MUNZ; J. FRESHMAN;
F & F, LLC; McGUINNESS;  MURAI, et. al.; SHARP; CONN; ZIMMERMAN;  JOSEPH, et. al.;
NURIK; BUSCHEL; R. R. A.; HOLLANDER; HOLLANDER FIRM; ROSEN; WEINTRAUB,
ROSEN & KING, P.A.; ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF; SUTTON;

BROWN and other unnamed conspirator's violation of 18 U. S. C. § 1962 ( c ) the Plaintiff has been illegally deprived of his freedom, has lost over $4 million in continuing contracted employment income; has been assessed a restitution debt of over $11.4 million and has expended over $150,000.00 in legal fees not to mention the demise of his 12 year long marriage.

212.    As a result of its misconduct the Defendants are liable to the Plaintiff for its losses to be determined at trial.

213.    Pursuant to RICO, 18 U. S. C. § 1964 ( c ) the Plaintiff is entitled to recover threefold its damages plus costs and attorney's fees from Defendants.

## COUNT TWO - RICO CONSPIRACY

214.    Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 213 as if fully set forth herein.

215.    At all relevant times Frederick B. NOWELL, Sr. is a "person" within the meaning of RICO 18 U. S. C. §§ 1961 ( 3 ) and 1964 ( c ).

216.    At all relevant times Defendants REDLAND; MUNZ; T. MUNZ; J. FRESHMAN; F & F, LLC; McGUINNESS; MURAI, et. al.; SHARP; CONN; ZIMMERMAN; JOSEPH, et. al.; NURIK; BUSCHEL; R. R. A.; HOLLANDER; HOLLANDER FIRM; ROSEN; WEINTRAUB, ROSEN & KING, P.A.; ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF; SUTTON; BROWN were all "persons" within the meaning of RICO, 18 U. S. C. §§ 1961 ( 3 ) and 1962 ( d ).

217.    At all relevant times Defendants REDLAND; MUNZ; T. MUNZ; J. FRESHMAN; F & F, LLC; McGUINNESS; MURAI, et. al.; SHARP; CONN; ZIMMERMAN; JOSEPH, et. al.; NURIK; BUSCHEL; R. R. A.; HOLLANDER; HOLLANDER FIRM; ROSEN; WEINTRAUB, ROSEN & KING, P.A.; ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF; SUTTON; BROWN formed an association-in-fact for the purpose of injuring the Plaintiff in his person, property, reputation, and business. This association-in-fact was an "enterprise" within the meaning of RICO 18 U. S. C. § 1961 ( 4 ).

218.    At all relevant times, this enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO 18 U. S. C. § 1962 ( c ).

46

219.   As set forth in Count One Defendants REDLAND; MUNZ; T. MUNZ; J. FRESHMAN; F & F, LLC; McGUINNESS; MURAI, et. al.; SHARP; CONN; ZIMMERMAN; JOSEPH, et. al.; NURIK; BUSCHEL; R. R. A.; HOLLANDER; HOLLANDER FIRM; ROSEN; WEINTRAUB, ROSEN & KING, P.A.; ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF; SUTTON; BROWN and each of the others associated with the enterprise conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U. S. C. § 1961 ( 5 ), in violation of RICO, 18 U. S. C. § 1962 ( c ).

220.   At all relevant times Defendants REDLAND; MUNZ; T. MUNZ; J. FRESHMAN; F & F, LLC; McGUINNESS; MURAI, et. al.; SHARP; CONN; ZIMMERMAN; JOSEPH, et. al.; NURIK; BUSCHEL; R. R. A.; HOLLANDER; HOLLANDER FIRM.; ROSEN; WEINTRAUB, ROSEN & KING, P.A.; ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF; SUTTON; BROWN and others unnamed were each associated with the enterprise and agreed and conspired to violate 18 U. S. C. § 1962 ( c ), that is, agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U. S. C. § 1962 ( d ).

221.   The named Defendants and others  committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect the objectives thereof, including but not at all limited to the acts set forth above.

222.   As a result of  Defendants REDLAND; MUNZ;  T. MUNZ;  J. FRESHMAN; F & F, LLC; McGUINNESS; MURAI, et. al.; SHARP; CONN; ZIMMERMAN; JOSEPH, et. al.; NURIK; BUSCHEL; R. R. A.; HOLLANDER; HOLLANDER FIRM; ROSEN; WEINTRAUB, ROSEN & KING, P.A.; ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF; SUTTON; BROWN and other unnamed conspirator's violation of 18 U. S. C. § 1962 ( c ) the Plaintiff has been illegally deprived of his freedom, has lost over $4 million in continuing contracted employment income; has been assessed a restitution debt of over $11.4 million and has expenses of over $150,000.00 in legal fees not to mention the demise of his 12 year long marriage.

223.   As a result of its misconduct the Defendants are liable to the Plaintiff for its losses to be determined at trial.

224.   Pursuant to RICO, 18 U. S. C. § 1964 ( c ) the Plaintiff is entitled to recover threefold its damages plus costs and attorney's fees from Defendants.

## COUNT THREE - FRAUD AND AIDING AND ABETTING REDLAND's FRAUD

225.   Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 though 224 as if fully set forth herein.

226.   At all relevant times Frederick B. NOWELL, Sr. was a "person" within the meaning of RICO 18 U. S. C. §§ 1961 ( 3 ) and 1964 ( c ).

227.   At all relevant times Defendants REDLAND; MUNZ; T. MUNZ; J. FRESHMAN; F & F, LLC; McGUINNESS; MURAI, et. al.; SHARP; CONN; ZIMMERMAN; JOSEPH, et. al.; NURIK; BUSCHELL; R. R. A.; HOLLANDER; HOLLANDER FIRM; ROSEN; ROSEN FIRM, ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF, SUTTON, BROWN were all "persons' within the meaning of RICO, 18 U. S. C. §§ 1961 ( 3 ) and 1962 ( c ).

228.   At all relevant times Defendants REDLAND; MUNZ; T. MUNZ; J. FRESHMAN; F & F, LLC; McGUINNESS; MURAI, et. al.; SHARP; CONN; ZIMMERMAN; JOSEPH, et. al.; NURIK; BUSCHELL; R. R. A.; HOLLANDER; HOLLANDER FIRM; ROSEN; ROSEN FIRM, ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF, SUTTON, BROWN formed an association-in-fact for the purpose of injuring the Plaintiff in his person, property, reputation, and business. This association-in-fact was an "enterprise" within the meaning of RICO, 18 U. S. C. § 1961 ( 4 ).

229.   At all relevant times, this enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U. S. C. § 1962 ( c ).

230.   Defendants MUNZ and REDLAND engaged in a fraudulent scheme to damage the Plaintiff in his business and reputation and to develop excuses and reasons for certain of Defendants REDLAND and MUNZ's improper conduct and improper business transactions by way of the following material misrepresentation:

( a )   On or before February 8, 2007 Defendants REDLAND and MUNZ represented or caused to be represented to the Federal Bureau of Investigation (FBI) and/or known

48

and unknown members of law enforcement that the Plaintiff had created and operated a scheme whereby Plaintiff allegedly embezzled in excess of $11.4 million dollars sometime between September 20, 1994 and February 8, 2007.

( b )   that neither REDLAND nor MUNZ had any knowledge of or authorized any payments to an entity known as NGI Marine and further that neither REDLAND nor MUNZ had any idea of this loss until discovered in late 2006.

( c )   that this alleged embezzlement by Plaintiff was in someway responsible for REDLAND's failure to pay the total workman's compensation premium that was due and payable.

( d )   that in general terms Defendants REDLAND and MUNZ were in some manner victims and that any related errors or failures to comply with lawful obligation are in someway related to their roles as a victim.

( e )   that REDLAND and MUNZ in no manner knew about nor authorized the over digging of the Homestead Pit.

( f )   that neither REDLAND nor MUNZ had any knowledge of nor participated in the false and fraudulent "as built" survey.

231.   Defendants   T. MUNZ;   J.   FRESHMAN;   F & F, LLC;   McGUINNESS; MURAI, et. al.; SHARP; CONN; ZIMMERMAN; JOSEPH, et. al.; NURIK; BUSCHELL; R. R. A.; HOLLANDER; HOLLANDER FIRM; ROSEN; ROSEN FIRM, ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF, SUTTON, BROWN did each aid and abet REDLAND and MUNZ's fraud against the Plaintiff in varying ways and by various means including inter alia:

( a )   Defendants MUNZ and T. MUNZ knowingly and willfully failed to advise the court and proper authorities that each of them did write, sign, and authorize checks to NGI Marine despite their fraudulent claims to the contrary.

( b )   Defendants J. FRESHMAN F & F, LLC; McGUINNESS; MURAI, et. al.; SHARP; and CONN aided and abetted the communications to law enforcement, the civil court and to each other and to others named and unnamed false and fraudulent allegations concerning the Plaintiff knowing same to be false and fraudulent.

( c )   Defendants ZIMMERMAN, JOSEPH et. al.; NURIK; BUSCHELL; R. R. A. each

49

participated in deceiving the Plaintiff either into pleading guilty or not properly pursuing every proper avenue and issue on appeal all to aid and abet the goals and purposes of the Enterprise.

( d )   Defendants HOLLANDER; HOLLANDER FIRM; ROSEN; ROSEN FIRM; ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF; SUTTON; and BROWN did aid and abet the actions of the other Defendants by causing the Plaintiff to be demeaned, belittled, degraded, defamed and otherwise made of disrepute in peripheral matters and actions all intended to discredit the Plaintiff and make him appear to be the cause of actions in which the Plaintiff's truthful testimony would damage REDLAND and MUNZ.

232.   Each and every Defendant knew or reasonably should have known that REDLAND and MUNZ were making false misrepresentations and Defendants T. MUNZ; J. FRESHMAN; F & F, LLC; McGUINNESS; MURAI, et al.; SHARP; CONN; ZIMMERMAN; JOSEPH et. al.; NURIK; Buschel; R. R. A.; HOLLANDER, HOLLANDER FIRM; ROSEN; ROSEN FIRM; ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF, SUTTON and BROWN therefore were providing REDLAND and MUNZ substantial assistance to perpetrate the Enterprise's fraud.

233.   Defendant REDLAND and MUNZ are liable for all the damages caused by there fraud and Defendants T. MUNZ; J. FRESHMAN; F & F, LLC; McGUINNESS; MURAI, et. al.; SHARP; CONN; ZIMMERMAN; JOSEPH, et. al.; NURIK; BUSCHELL; R. R. A.; HOLLANDER; HOLLANDER FIRM; ROSEN; ROSEN FIRM, ANDREW HALL; ADAM HALL; H. L. H.; RATCLIFF, SUTTON, BROWN are liable for all the damages as a result of their aiding and abetting REDLAND and MUNZ's fraud.

50

WHEREFORE, Plaintiff prays for judgment against the Defendants for

( a )  Compensatory damages in an amount not now known, but believed to be in excess of $25,000,000.00 trebled pursuant to RICO;

( b )  Punitive damages in an amount to be determined at trial;

( c )  Plaintiff's costs, fees and other expenses, including but not limited to attorney's fees pursuant to 18 U. S. C. § 1964 ( c );

( d )  such other relief as may be just and proper.

Dated: Lexington, Kentucky

2/23/2009 , 2009

Respectfully Submitted,

Frederick B. Nowell, Sr.
Pro se
79553-004 Anteaus Unit
Federal Medical Center - Lexington
P. O. Box 14500
Lexington, KY 40512

51

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

## I. (a) PLAINTIFFS

NOWELL, FREDERICK BRADLEY, SR.

**(b)** County of Residence of First Listed Plaintiff   BROWARD
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

FREDERICK BRADLEY NOWELL, SR., Pro Se
79553-004 Antaeus Unit
Federal Medical Center-Lexington
P.O. Box 14500   Lexington, KY. 40512

## DEFENDANTS

THE REDLAND COMPANY, INC., et.al.
(See Attached Style Page)   Miami-Dade
County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

**(d)** Check County Where Action Arose:   ☐ MIAMI-DADE   ☐ MONROE   ☒ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

0:09CV 60308 Altonaga
Brown

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court   Multi Lingua

☐ 3 Re-filed- (see VI below)

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☒ NO   b) Related Cases ☐ YES ☒ NO

JUDGE                    DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

18 U.S.C. §1961 et seq.
Racketeer Influenced and Corrupt Organization Act

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 75Million

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   2/23/2009

**FOR OFFICE USE ONLY**

AMOUNT _____   RECEIPT # _____   IFP   Yes